OPINION
{¶ 1} Appellant Bobby Hall appeals his convictions for involuntary manslaughter and aggravated assault. The following facts give rise to this appeal.
 {¶ 2} On January 1, 2004, Oscar Parks went to appellant's residence to play chess, which they did on a regular basis. Approximately one and one-half hours after Parks arrived at appellant's residence, another friend, Donald Perrin, also stopped by appellant's residence. Shortly after Perrin's arrival, the three men were startled when someone banged loudly on the side window of the kitchen. Appellant went to the door and asked who was there. Upon receiving no response, appellant opened the door. David Lipkins appeared, in the doorway, and informed appellant that he wanted to talk to Perrin.
 {¶ 3} Appellant refused Lipkins entry into his residence and Lipkins attempted to push his way in. Appellant picked up a beer bottle and struck Lipkins on the head. Lipkins grabbed appellant and they fell against the stove. Perrin and Parks stepped in and broke up the fight. Thereafter, the fight continued outside appellant's residence. Appellant and Lipkins continued to fight in a grassy area beside the house. Perrin told appellant to "chill out" and asked Lipkins to leave. Lipkins refused to do so.
 {¶ 4} Subsequently, Lipkins asked appellant to follow him into the street, which appellant did. Perrin and Parks continued to watch the fight. Both Perrin and Parks believed the fight was over as it appeared tempers had somewhat cooled. However, suddenly, Lipkins swung at appellant and appellant screamed and turned away. Perrin and Parks ran down the driveway. Before they reached appellant and Lipkins, Lipkins struck appellant in the chest area. Lipkins dragged appellant to the ground again and was on top of him. Perrin and Parks pulled Lipkins off of appellant. Lipkins got up and walked approximately four feet and slumped over the hood of a truck.
 {¶ 5} Perrin went to Lipkins, turned him over, and noticed that he had been stabbed. Parks observed a knife laying by appellant's hand, while appellant was on his hands and knees in the driveway. Perrin got Lipkins to stand and Lipkins began walking toward his truck. However, when he tried to open the door he fell. Perrin and Parks placed Lipkins in his truck. Appellant and Perrin began performing CPR on Lipkins. Parks went into appellant's residence and told appellant's wife to call 911.
 {¶ 6} Appellant, Perrin and Parks left the scene before the police arrived. Parks eventually went to the police station and gave a statement. Four days later, appellant turned himself into the Stark County Sheriff. On February 2, 2004, the Stark County Grand Jury indicted appellant for one count of involuntary manslaughter and one count of aggravated assault.
 {¶ 7} This matter proceeded to trial on May 10, 2004. Following deliberations, the jury found appellant guilty as charged in the indictment. The trial court sentenced appellant to eight years imprisonment, for the offense of involuntary manslaughter, to be served concurrently with a seventeen-month sentence for the offense of aggravated assault.
 {¶ 8} Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 9} "I. The trial court erred in providing an inaccurate and misleading instruction to the jury on flight.
 {¶ 10} "II. Appellant's conviction of involuntary manslaughter and aggravated assault is against the manifest weight of the evidence."
 I {¶ 11} In his First Assignment of Error, appellant contends the trial court provided the jury with an inaccurate and misleading jury instruction. We disagree.
 {¶ 12} The jury instruction appellant challenges, in this assignment of error, concerns flight. Specifically, the trial court instructed the jury as follows:
 {¶ 13} "In this case there is evidence that the Defendant may have fled from justice. You may not presume the Defendant guilty from this evidence. You may, however, infer a consciousness of guilt regarding the evidence of the Defendant's alleged flight. An accused's flight and related conduct may be considered as evidence of consciousness of guilt and, thus, of guilt itself." Tr. Vol. II at 402.
 {¶ 14} Appellant claims the above instruction implies that he is a fugitive from justice. A "fugitive from justice" is a person who (1) is suspected of or has been convicted of a crime; (2) is sought by the jurisdiction so that he may be subjected to its criminal system and (3) has left the jurisdiction and is found within the boundaries of another. State v. Adkins (1992),80 Ohio App.3d 817, 821. Appellant argues he is not a "fugitive from justice" because he was unaware of the criminal charges against him and there was no evidence he fled to another jurisdiction. Further, appellant notes that he voluntarily surrendered to the authorities.
 {¶ 15} In support of its decision to instruct the jury on flight, the trial court relied upon the case of State v.Goodbread, Butler App. No. CA2003-02-038, 2004-Ohio-419. InGoodbread, the Twelfth District Court of Appeals held the trial court properly provided the jury with an instruction, on flight, where the defendant fled from Butler County to Hamilton County after he repeatedly stabbed the victim, disposed of the knife used in the crime and his bloody clothing, and never made an attempt to contact law enforcement officials. Id. at 3-4.
 {¶ 16} Appellant maintains the case sub judice is distinguishable from Goodbread because he did not engage in any of the conduct as described in Goodbread. When reviewing a trial court's jury instructions, we must review the record to determine whether the trial court's decision to give or decline to give a requested jury instruction constitutes an abuse of discretion. State v. Wolons (1989), 44 Ohio St.3d 64, 68. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 17} Upon review of the record in this matter, we conclude the trial court did not abuse its discretion when it instructed the jury on flight. Appellant fled the scene before the police arrived. Appellant never returned to his residence. Parks spoke to appellant and advised him to turn himself into the police, which he eventually did four days later. Thus, the record supports the instruction on flight because appellant knew he killed Lipkins, knew the police would arrive shortly and fled to avoid arrest for the crime. This court has previously held that where there is some evidence as to flight, the trial court does not abuse its discretion when it gives a jury instruction on flight. State v. Edwards (May 17, 1999), Stark App. No. 1998CA00170, at 5.
 {¶ 18} Appellant's First Assignment of Error is overruled.
 II {¶ 19} Appellant maintains, in his Second Assignment of Error, his conviction for involuntary manslaughter and aggravated assault is against the manifest weight of the evidence. We disagree.
 {¶ 20} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175. See also, State v. Thompkins (1997), 78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. It is based upon this standard that we review appellant's Second Assignment of Error.
 {¶ 21} Appellant contends his convictions are against the manifest weight of the evidence because he acted in self-defense. Self-defense is an affirmative defense and a defendant must demonstrate the elements of that defense by a preponderance of the evidence. State v. Seliskar (1973), 35 Ohio St.2d 95, 96. In order to establish the affirmative defense of self-defense, the evidence must show the following three elements: "* * * (1) the defendant was not at fault in creating the violent situation; (2) the defendant has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was the use of force; and (3) the defendant did not violate any duty to retreat." State v. Perry, Richland App. No. 02-CA-77, 2003-Ohio-6097, at ¶ 25.
 {¶ 22} At trial, the state argued appellant failed to establish self-defense, by a preponderance of the evidence, because he violated his duty to retreat or avoid the danger. In response, appellant argues Lipkins escalated the incident that resulted in his death. In support of this argument, appellant refers to Parks' testimony, at trial, wherein he stated:
 {¶ 23} "Q. Did things then seem to be calming down a little?
 {¶ 24} "A. Yes. It was calm. We really couldn't hear anything from where we were standing. They were still arguing. We could barely hear them.
 "* * * {¶ 25} "Q. And then without warning, you see David Lipkins —
 "* * * {¶ 26} "Q. — punch Bobby in the face; is that right?
 {¶ 27} "A. Yes.
 {¶ 28} "Q. And specifically you see him punch him where?
 {¶ 29} "A. In the face.
 {¶ 30} "Q. And you're indicating your eye?
 {¶ 31} "A. Uh-huh.
 {¶ 32} "Q. And you say there were keys —
 {¶ 33} "A. Uh-huh
 {¶ 34} "Q. — in that hand?
 {¶ 35} "A. (Nods head up and down.) Yeah about 20, 15, 20 keys.
 {¶ 36} "Q. And when that happens, I believe you showed the Jury, you demonstrated that Bobby went like this, (Indicating)?
 {¶ 37} "A. He turned away from him.
 {¶ 38} "Q. And Lipkins advanced on him again?
 {¶ 39} "A. Yes.
 {¶ 40} "Q. And that's when you say Bobby hit him one time in the chest?"
 {¶ 41} "A. Yes." Tr. Vol. II at 258-260.
 {¶ 42} Appellant contends the above testimony establishes that he reacted to Lipkins striking him in his eye, with the keys, and therefore, he acted in self-defense. The record does not support this conclusion and thus, the jury's verdict is not against the manifest weight of the evidence. Although Lipkins arrived at appellant's residence intoxicated, appellant's subsequent conduct created the violent situation resulting in Lipkins' death. Appellant never called the police to have Lipkins removed. Instead, appellant followed Lipkins outside and continued to argue with him.
 {¶ 43} Most importantly, prior to exiting his residence with Lipkins, appellant grabbed a knife from the kitchen and took it with him. Further, instead of retreating from the confrontation, appellant agreed to join Lipkins, in the middle of the street, where the fight continued. Clearly, appellant did not make any effort to retreat. We conclude the jury did not lose its way in resolving conflicts in the evidence. Accordingly, appellant's convictions are not against the manifest weight of the evidence.
 {¶ 44} Appellant's Second Assignment of Error is overruled.
 {¶ 45} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
Wise, J., Hoffman, P.J., and Edwards, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
Costs assessed to Appellant.