[Cite as *In re J.T.*, 2014-Ohio-5062.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE:  J.T. | : | APPEAL NOS. C-140143 |
| | | C-140144 |
| | : | TRIAL NOS. 13-7053X |
| | | 13-7055X |
| | : | *O P I N I O N.* |

Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:   Affirmed in Part, Reversed in Part, and Appellant
Discharged in Part

Date of Judgment Entry on Appeal:  November 14, 2014

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Rachel Lipman Curran*, Assistant Prosecuting Attorney, for Appellee State of Ohio,

*Raymond T. Faller*, Hamilton County Public Defender, and *Gordon C. Magella*, Assistant Public Defender, for Appellant J.T.

Please note:  this case has been removed from the accelerated calendar.

**DINKELACKER, Judge.**

{¶1} Appellant J.T. appeals an adjudication of delinquency for conduct that, if committed by an adult, would have constituted the offenses of tampering with evidence under R.C. 2921.12 and having weapons under a disability under former R.C. 2923.13. We hold that the evidence was insufficient to support the adjudication for having weapons while under a disability, and we, therefore, reverse that part of the trial court's judgment. We affirm the judgment in all other respects.

## I. Factual Background

{¶2} The record shows that on August 7, 2013, between 10:00 and 11:00 p.m., Cincinnati Police Officer Antonio Etter, a member of the violent crime squad, was working undercover in the Northside neighborhood of Cincinnati. Etter and his partner saw five young men loitering behind some businesses on Hamilton Avenue. Although the weather was warm, some of them were wearing hats and sweatshirts. Different members of the group stood up and pulled masks over their faces or pulled up their shirts to cover their faces. The police officers found this behavior to be suspicious and called for a uniformed officer. An additional undercover unit also responded.

{¶3} The group of young men started walking north on Hamilton Avenue on the eastern side of the street. J.T. broke off from the group and walked across Hamilton Avenue to the western side of the street. Etter and the uniformed officers stopped the group on the eastern side of the street.

{¶4} Cincinnati Police Officer Julie Graham of the violent crime squad was also working undercover in Northside that night. She stated that she was assigned

2

there because of "issues with robberies." She responded to Etter's call for assistance, and saw J.T. walking on Hamilton Avenue, on the west side of the street.

{¶5} According to Graham, J.T. had a black mask pulled down over his face, and he was walking in front of a white male. He turned a corner and stood in the middle of the street with his hand in his pocket.

{¶6} When the uniformed officers arrived in a marked, lighted police car and stopped the individuals walking across the street, J.T. looked directly at them. He then reached into his pocket, walked toward some bushes, and threw down something shiny. After J.T. was detained, Graham searched the bushes where she had seen him throw the object and found a small silver handgun.

## II. Tampering with Evidence

{¶7} J.T. presents two assignments of error for review. In his first assignment of error, he contends that the trial court erred in adjudicating him delinquent for committing acts which, if committed by an adult, would have constituted tampering with evidence. He argues that the evidence was insufficient to support the adjudication. This assignment of error is not well taken.

{¶8} R.C. 2921.12(A)(1) provides that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." There are three elements of the offense: (1) the knowledge of an official proceeding or investigation in process or likely to be instituted, (2) the alteration, destruction or concealment, or removal of the potential evidence, and (3) the purpose of impairing the potential evidence's availability or value in the proceeding or investigation. *State v. Straley*, ____ Ohio St.3d ____, 2014-Ohio-2139,

3

11 N.E.3d 1175, ¶ 11. The state may prove the elements of the offense by circumstantial evidence. *State v. Glunt*, 9th Dist. Medina No. 13CA0050-M, 2014-Ohio-3533, ¶ 8.

{¶9} J.T. argues that the gun he allegedly threw in the bushes was not related to an ongoing or likely investigation. He relies on the Ohio Supreme Court's recent decision in *Straley*. In that case, two plainclothes narcotic detectives stopped the defendant's car for erratic driving. Because the defendant showed signs of alcohol impairment, the police officers would not let her drive home. As the officers tried to arrange a ride for her, the defendant announced she had to urinate. She ran to the corner of a building and did so. One of the officers walked to the area where she had gone and saw a clear cellophane baggie covered with urine containing what appeared to be crack cocaine.

{¶10} The defendant was later convicted of possession of cocaine, trafficking in cocaine, and tampering with evidence, but the Second Appellate District reversed the tampering-with-evidence conviction. The Supreme Court affirmed the appellate court's decision, holding that "[a] conviction for tampering with evidence pursuant to R.C. 2921.12(A)(1) requires proof that the defendant intended to impair the value or availability of evidence that related to an existing or likely official investigation or proceeding." *Straley* at syllabus. It added that "[l]ikelihood is measured at the time of the act of alleged tampering." *Id.* at ¶ 19.

{¶11} Applying that holding to the case before it, the court in *Straley* stated:

There is nothing in the record to suggest that the officers were conducting or likely to conduct an investigation into trafficking or possession of cocaine when Straley discarded the baggie. The baggie of cocaine did not relate to either an ongoing investigation of driving

4

while under the influence of alcohol or driving without a license and had no evidentiary value to a likely investigation of public urination, and thus the record does not support a conviction for tampering with evidence.

*Id.* at ¶ 19.

{¶12} The present case is distinguishable. In this case, the police were working in the Northside neighborhood because multiple robberies had occurred there. Police officers saw a group of young men covering their faces, as if to participate in a robbery. Officer Graham saw J.T., who was wearing a black mask, cross the street and stand with his hand in his pocket. The police suspected that a robbery was about to occur and were investigating that possibility. Thus, there was evidence from which the trier of fact could have concluded that the handgun was related to an existing or likely investigation of a robbery. *See State v. Turner*, 5th Dist. Stark No. 2014CA00058, 2014-Ohio-4678, ¶ 63-68; *Glunt*, 9th Dist. Medina No. 13CA0050-M, 2014-Ohio-3533, at ¶ 6-16.

{¶13} J.T. also argues that the state did not show that he knew that an official proceeding or investigation was in progress or about to occur at the time he removed the handgun from his pocket. We disagree. J.T. had just split off from a group of young men who were putting masks over their faces. Officer Graham testified that J.T. had looked directly at the uniformed officers who had stopped the other members of the group. Then, he had reached in his pocket, had walked toward some bushes, and had thrown something shiny into the bushes. Thus, there was circumstantial evidence to show that he knew that an investigation was ongoing or likely to occur. *See State v. Sharp*, 3d Dist. Putnam No. 12-13-01, 2014-Ohio-4140, ¶ 31-32; *Glunt* at ¶ 16.

5

{¶14}   Our review of the record shows that a rational trier of fact, after viewing the evidence in a light most favorable to the prosecution, could have found beyond a reasonable doubt that the state had proved all of the elements of tampering with evidence under R.C. 2921.12(A).   Therefore, the evidence was sufficient to support the adjudication of delinquency for that offense.   *See In re Washington*, 75 Ohio St.3d 390, 392, 662 N.E.2d 346 (1996); *In re Booker*, 133 Ohio App.3d 387, 389-390, 728 N.E.2d 405 (1st Dist.1999).   We overrule J.T.'s first assignment of error.

### III.  Having Weapons While Under a Disability

{¶15}   In his second assignment of error, J.T. contends that the trial court erred in adjudicating him delinquent for acts, which if committed by an adult, would have constituted the offense having weapons under a disability in violation of former R.C. 2923.13.   He argues that the evidence was insufficient to support the adjudication.  This assignment of error is well taken.

{¶16}   The record shows that J.T. was originally charged under former R.C. 2923.13(A)(2), which provided that no person could possess a firearm if the person had "been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony of violence."  At the beginning of trial, the state moved to amend the complaint, apparently because J.T. had been adjudicated delinquent for committing acts that would have constituted breaking and entering under R.C. 2911.13, which is not an offense of violence.  *See State v. Mosley*, 88 Ohio App.3d 461, 466-467, 624 N.E.2d 297 (1st Dist.1993).

{¶17}   The trial court permitted the state to amend the complaint to allege a violation of former R.C. 2923.13(A)(1).  It provided that "[n]o person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person is

a fugitive from justice." No statutory definition of the term "fugitive from justice" as used in former R.C. 2923.13(A)(1) exists. *State v. Cherry*, 171 Ohio App.3d 375, 2007-Ohio-2133, 870 N.E.2d 808, ¶ 18 (2d Dist.).

{¶18} But some Ohio appellate courts have discussed the term. J.T. relies upon the *Cherry* case from the Second Appellate District, in which the court, taking guidance from extradition cases, stated:

> [T]he alleged fugitive from justice must: (1) have incurred guilt—*i.e.*, be guilty of having committed some offense; (2) be aware that he is being sought by police in connection with that offense; and (3) being aware that he is being sought by police, take some affirmative action to elude detection by police. The confluence of these elements would serve as notice to an individual that he has become, or is becoming a fugitive from justice, thereby working a statutory disability upon the right that he would otherwise have to bear a firearm.

*Id.* at ¶ 21.

{¶19} J.T. also relies upon a case from the Eighth Appellate District. In *State v. Anderson*, 183 Ohio App.3d 522, 2009-Ohio-3900, 917 N.E.2d 843 (8th Dist.), the court stated that the mental state of recklessness applies in determining whether a defendant was aware that he or she was a fugitive from justice. *Id.* at ¶ 30.

{¶20} We do not find these cases to be persuasive. Subsequent to both *Cherry* and *Anderson*, the Ohio Supreme Court discussed a conviction under section (A)(3) of the former weapons-under-a-disability statute. The court held that:

> A conviction for violation of the offense of having weapons under disability as defined by R.C. 2923.13(A)(3) does not require proof of a culpable mental state for the element that the offender is under

7

indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

*State v. Johnson*, 128 Ohio St.3d 107, 2010-Ohio-6301, 942 N.E.2d 347, paragraph one of the syllabus. It reasoned that in defining the offense, the legislature specified a culpable mental state of knowingly for the element of possession of the weapon, but it did not assign an additional mens rea for the additional elements. *Id.* at ¶ 42.

{¶21} That rationale applies equally to former R.C. 2923.13(A)(1), the statute under which J.T. was adjudicated delinquent. *State v. Kortz*, 2d Dist. Montgomery No. 25041, 2013-Ohio-121, ¶ 13-15. Because the statute required proof that J.T. knowingly possessed a firearm, the state did not have to prove a culpable mens rea for the additional element that he was a fugitive from justice. *See id.* at ¶ 15.

{¶22} Nevertheless, even though the state did not have to prove that J.T. was aware that he was wanted for a criminal offense, it still failed to present sufficient evidence that he had "fled from justice." *See State v. McClelland*, 11th Dist. Portage Nos. 1488 and 1491, 1985 Ohio App. LEXIS 9740, *9-10 (Dec. 20, 1985). In discussing the "penal intent" behind former R.C. 2923.13(A)(1), the Eleventh Appellate District has stated: "There is no question that the legislature intended to keep firearms out of the hands of dangerous or potentially dangerous individuals. Included in that class, and listed first in order of importance, are fugitives who are trying to avoid capture for criminal offenses for which they have been charged." *Id.* at *10.

{¶23} At the hearing before the magistrate, Officer Graham testified that after they had detained J.T., she and her partner "ran him on the computer in Officer

Birch's car, and we were able to bring up his information. He had a felony warrant, so we were able to verify that it was him." Thus, the only evidence that J.T. was wanted for a prior offense was a hearsay statement. The state did not present any certified records of the warrant or any other evidence showing that J.T. was wanted on a prior offense. At a hearing on J.T.'s objections to the magistrate's report, the state argued additional facts about the warrant and a probation violation, but it never actually presented any evidence to demonstrate those alleged facts.

{¶24} The state failed to present any evidence of what prior offense J.T. had committed or was alleged to have committed. It simply did not prove that he had been charged with a prior offense for which he was trying to avoid capture. Thus, the state failed to meet its burden to show beyond a reasonable doubt that J.T. was a fugitive from justice, an essential element of the offense. Because the state failed to prove that element, we have no choice but to sustain J.T.'s second assignment of error, reverse the adjudication of delinquency for acts which, if committed by an adult, would have constituted having weapons while under a delinquency, and order him discharged on that offense. *See Washington*, 75 Ohio St.3d at 392, 662 N.E.2d 346; *Booker*, 133 Ohio App.3d at 389-390, 728 N.E.2d 405. We affirm the trial court's judgment in all other respects.

Judgment affirmed in part, reversed in part, and appellant discharged in part.

**HILDEBRANDT, P.J.**, and **HENDON, J.**, concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.