[Cite as *In re J.H.*, 2022-Ohio-3987.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE: J.H.            :          APPEAL NOS. C-210663
                                          C-210664

                                    :          TRIAL NOS. 21-1860Z
                                          21-1862Z

                                    :

                                    :          *O P I N I O N.*

                                    :

Appeals From: Hamilton County Juvenile Court

Judgments Appealed From Are: Affirmed in Part and Reversed in Part

Date of Judgment Entry on Appeal: November 9, 2022

*Joseph T. Deters*, Hamilton County Prosecutor, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Jessica R. Moss*, Assistant Public Defender, for Defendant-Appellant.

**BERGERON, Presiding Judge.**

{¶1}   An early morning raid discovered defendant-appellant J.H. sleeping in bed with a gun concealed in his pants.  The juvenile court ultimately adjudged him delinquent for carrying a concealed weapon and having a weapon under disability (owing to an outstanding warrant).  On appeal, J.H. challenges both adjudications based on alleged evidentiary errors, as well as on sufficiency and manifest weight grounds.  Based on our review of the record, we hold that insufficient evidence supported the weapons under disability adjudication because the state presented no evidence that J.H. was a "fugitive from justice."  However, we reject J.H.'s various challenges to his concealed weapons adjudication. We accordingly reverse the juvenile court's judgments in part and affirm them in part.

I.

{¶2}   In the morning hours of June 24, 2021, forceful shouts broke the silence in the bedroom wherein J.H. and a few of his friends lay fast asleep.  The teenage boys awoke to find themselves surrounded by glaring lights and guns held in their faces.  Members of the Cincinnati Police Department's Fugitive Apprehension Unit had entered the home on Clephane Avenue and found their way to the bedroom with the hopes of locating J.H.  The officers handcuffed and questioned each of the boys, then identified J.H. and released the remaining boys.  After one of the officers handcuffed J.H., he noticed a gun in J.H.'s pocket.  The officer then reached into J.H.'s pocket and pulled out a teal-colored gun (along with an accompanying magazine).  J.H. was arrested and taken into custody without incident.

{¶3}   Earlier that morning, Cincinnati Police Officer Scott Traufler had received information that J.H. was at the Clephane house.  According to the state, J.H.

2

had a warrant out for his arrest for aggravated robbery, prompting the aforementioned search and arrest of J.H. Defense counsel maintains that the warrant was improperly issued after J.H. failed to show up for a pretrial hearing that did not require his attendance in the first place.

{¶4} In September 2021, following a trial, a magistrate adjudicated J.H. delinquent as to carrying a concealed weapon and having weapons under disability. J.H. filed objections to the magistrate's decision, and following the objections hearing, the juvenile court overruled J.H.'s objections and adopted the magistrate's adjudication in pertinent part. A dispositional hearing ensued, with the court placing J.H. on probation, giving him a suspended commitment to the Ohio Department of Youth Services, ordering him to complete a residential treatment program, and ordering that the firearm be forfeited. J.H. now appeals, presenting two assignments of error. We discuss the assignments of error out of order for ease of discussion.

II.

{¶5} In a portion of his second assignment of error, J.H. challenges the sufficiency of the evidence to support his adjudication for having weapons under disability, as well as raising a manifest weight of the evidence claim. Specifically, J.H. insists that the state presented insufficient evidence to establish that he was a fugitive from justice, an essential element of his weapons under disability offense.

{¶6} In considering a sufficiency challenge, "the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *State v. Dent*, 163 Ohio St.3d 390, 2020-Ohio-6670, 170 N.E.3d 816, ¶ 15. We review sufficiency determinations de novo but "the court is not to weigh

3

the evidence." *State v. McDonald*, 1st Dist. Hamilton No. C-180310, 2019-Ohio-3595, ¶ 12; *Dent* at ¶ 15 ("[O]ur [sufficiency-of-the-evidence] review is de novo."). And "in conducting a sufficiency review, a reviewing court must consider all the evidence admitted at trial, even improperly admitted evidence." *State v. Kareski*, 137 Ohio St.3d 92, 2013-Ohio-4008, 998 N.E.2d 410, ¶ 24, citing *Lockhart v. Nelson*, 488 U.S. 33, 34, 109 S.Ct. 285, 102 L.Ed.2d 265 (1998).

{¶7} As relevant to J.H.'s adjudication, pursuant to R.C. 2923.13(A)(1), "unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply: (1) the person is a fugitive from justice." To be a fugitive from justice, a defendant must have been charged with a prior offense for which he sought to avoid capture and he must have "fled from justice." *In re J.T.*, 2014-Ohio-5062, 21 N.E.3d 1136, ¶ 22, 24 (1st Dist.). The burden rests on the state to prove beyond a reasonable doubt that J.H. qualified as a fugitive from justice. *Id.* at ¶ 24.

{¶8} While no statutory definition of "fugitive from justice" exists, various appellate districts, including our own, have endeavored to flesh out the concept, albeit without uniformity in these approaches. In *State v. Cherry*, 171 Ohio App.3d 375, 2007-Ohio-2133, 870 N.E.2d 808 (2d Dist.), the Second District, in evaluating a sufficiency challenge, elaborated on the meaning of "fugitive from justice." *Id.* at ¶ 19. Utilizing the definition of "fugitive from justice" as provided by extradition laws, the Second District formulated a comparable definition: "the alleged fugitive from justice must: (1) have incurred guilt – i.e., be guilty of having committed some offense; (2) be aware that he is being sought by police in connection with that offense; and (3) being aware that he is being sought by police, take some affirmative action to elude detection

4

by police." *Id.* at ¶ 21. In *State v. March*, 2019-Ohio-2001, 136 N.E.3d 932, ¶ 24 (8th Dist.), the Eighth District adopted the exact definition of "fugitive from justice" in R.C. 2923.13(A)(1) as used by the Second District in *Cherry*. And in an Eleventh District case, *State v. McClelland*, 11th Dist. Portage Nos. 1488 and 1491, 1985 Ohio App. LEXIS 9740, *10 (Dec. 20, 1985), the court weighed the fact that the defendant "knew there was still an active warrant for his arrest" (as well as the fact that the defendant had fled the jurisdiction) in determining that the defendant was a fugitive from justice. Our court, however, rejected the awareness requirement reflected in these decisions in *In re J.T.*, holding that "the state did not have to prove that [defendant] was aware that he was wanted for a criminal offense." *In re J.T.* at ¶ 22.

{¶9} In line with *In re J.T.*, other districts do not require awareness by the defendant that the authorities are searching for him. In *State v. Hall*, 5th Dist. Stark No. 2004CA00174, 2005-Ohio-167, for example, the Fifth District defined "fugitive from justice" as a person who "(1) is suspected of or has been convicted of a crime; (2) is sought by the jurisdiction so that he may be subjected to its criminal system[;] and (3) has left the jurisdiction and is found within the boundaries of another." *Id.* at ¶ 14. The Ninth District also subscribes to this approach, framing the inquiry in nearly identical terms. *See State v. Adkins*, 80 Ohio App.3d 817, 610 N.E.2d 1143 (9th Dist.1992).

{¶10} While appellate districts in Ohio disagree as to the awareness requirement and they do not use the same verbiage to define a "fugitive from justice," a consensus exists among the districts that the state must establish that the defendant took some affirmative step to elude detection by the police. *See March* at ¶ 25 ("R.C. 2923.13(A)(1) requires the state to show that [defendant] was a fugitive from justice,

5

which, in turn, requires the state to show that [defendant] 'took an affirmative action to elude detection by police.' "); *Cherry* at ¶ 21 (The defendant "must * * * take some affirmative action to elude detection by the police."); *Adkins* at 821 (The state must prove that the defendant "left the jurisdiction and is found within the boundaries of another."); *In re J.T.*, 2014-Ohio-5062, 21 N.E.3d 1136, at ¶ 22, quoting *McClelland* at *9 (The state must "present sufficient evidence that [defendant] had 'fled from justice.' "). And the court in *McClelland* relied on the fact that "*Webster's New World Dictionary* (1979) defines 'fugitive' as one who is fleeing from danger or justice." *McClelland* at *9. This standard thus requires action, rather than a defendant passively going about his business within the relevant jurisdiction.

{¶11} The facts of extant cases help illustrate the point. For example, the state may prove: (1) that the defendant left the jurisdiction, *Adkins* at 821; (2) that he fled from the police when they showed up to apprehend him, *McClelland*, 11th Dist. Portage Nos. 1488 and 1491, 1985 Ohio App. LEXIS 9740, at *11-12; *March*, 2019-Ohio-2001, 136 N.E.3d 932, at ¶ 26; or (3) that he took other action to evade arrest that "endanger[ed] the life of an officer," such as engaging in a high-speed car chase or firing a gun at a police officer, *McClelland* at *11-12; *Cherry*, 171 Ohio App.3d 375, 2007-Ohio-2133, 870 N.E.2d 808, at ¶ 22; *State v. Anderson*, 183 Ohio App.3d 522, 2009-Ohio-3900, 917 N.E.2d 843, ¶ 42; *State v. Kortz*, 2d Dist. Montgomery No. 25041, 2013-Ohio-121, ¶ 5. These examples are certainly not exhaustive, but the state must show more than "uncooperative" and "reluctant" behavior toward police officers. *March* at ¶ 26.

{¶12} In the case before us, the state points to the warrant that precipitated the arrest of J.H. and his apparent awareness of the existence of the warrant to

6

establish his "fugitive" status. However, the state failed to identify any evidence supporting the notion that J.H. "fled from justice," *In re J.T.*, 2014-Ohio-5062, 21 N.E.3d 1136, at ¶ 22, consistent with the caselaw identified above. In fact, we are unaware of any case where the simple existence of a warrant justified a conclusion that the defendant qualified as a fugitive from justice. *See March* at ¶ 29 (noting that a "fugitive from justice" "does not require that a defendant take an affirmative action to elude a court appearance; it requires eluding detection by police, who would be seeking a defendant on a capias").

{**¶13**} Moreover, we find it significant that J.H. made no effort to resist arrest or flee from the authorities as they sought to apprehend him. In *March*, even though the defendant acted "uncooperative" with respect to his apprehension, the court found insufficient evidence to satisfy the fugitive from justice requirement. *Id.* at ¶ 26. J.H. did not leave the jurisdiction and did not flee from (or resist) the police when they showed up to arrest him. He was found sleeping inside a residence in Hamilton County and, according to Officer Traufler, police arrested him "without incident." Accordingly, we conclude that the state failed to present sufficient evidence to establish that J.H. was a fugitive from justice, an essential element of his adjudication for having weapons under disability.

{**¶14**} We sustain in part J.H.'s second assignment of error, concluding that his adjudication for having weapons under disability is not supported by sufficient evidence. This conclusion renders J.H.'s remaining challenges to his weapons under disability adjudication (on evidentiary and manifest weight grounds, as presented in his first and second assignments of error) moot.

III.

{¶15} As to J.H.'s adjudication for carrying a concealed weapon, in his first assignment of error, he alleges that the juvenile court abused its discretion by admitting state's evidence that lacked proper authentication. In his second assignment of error, he challenges the adjudication as based on insufficient evidence and against the manifest weight of the evidence.

{¶16} With respect to his evidentiary objection, J.H. disputes that the firearm admitted into evidence was the same gun recovered during his arrest. Authentication represents a threshold condition for the admissibility of evidence. Pursuant to Evid.R. 901(A), "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." A "witness with knowledge" may offer "[t]estimony that a matter is what it is claimed to be" as a means of authenticating a document or object. Evid.R. 901(B)(1). And, "[a]uthentication is 'a very low threshold, which is less demanding than the preponderance of the evidence.'" *State v. Patterson*, 1st Dist. Hamilton No. C-170329, 2018-Ohio-3348, ¶ 13, quoting *State v. White*, 4th Dist. Scioto No. 03CA2926, 2004-Ohio-6005, ¶ 61. Here, Officer Traufler, with personal knowledge, identified the weapon in evidence as the firearm he retrieved from J.H. at the time of his arrest. The firearm was teal and had a serial number on it, rendering it easily identifiable. Based on this testimony, we find no abuse of discretion in the juvenile court's decision to admit the firearm as evidence.

{¶17} Turning to the sufficiency and manifest weight arguments, we provided the sufficiency standard above and the manifest weight one is equally familiar: in that respect, we sit as a "thirteenth juror," *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678

8

N.E.2d 541 (1997), and "review the entire record, weigh the evidence and reasonable inferences, [and] consider the credibility of the witnesses." *State v. Barnthouse*, 1st Dist. Hamilton No. C-180286, 2019-Ohio-5209, ¶ 6. We will only reverse if the trial court " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Sipple*, 2021-Ohio-1319, 170 N.E.3d 1273, ¶ 7 (1st Dist.), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶18} J.H. first insists that he did not "conceal" the firearm from the officers. After all, he was fast asleep right before the officers interrupted his slumber. Pursuant to R.C. 2923.12(A), "[n]o person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, any of the following: (1) A deadly weapon other than a handgun; (2) A handgun other than a dangerous ordnance; or (3) A dangerous ordnance." "A gun is 'concealed' as that term is used in R.C. 2923.12 if it is 'so situated not to be discernable by ordinary observation by those near enough to see it if it were not concealed.' " *State v. McGee*, 1st Dist. Hamilton No. C-150496, 2016-Ohio-7510, ¶ 26, quoting *State v. Davis*, 15 Ohio App.3d 64, 64, 472 N.E.2d 751 (1st Dist.1984). And "[t]he element of concealment in the offense of carrying a concealed weapon does not require that the weapon be completely hidden from view under all conceivable circumstances." *McFinley v. Bethesda Oak Hosp.*, 79 Ohio App.3d 613, 618, 607 N.E.2d 936 (1st Dist.1992).

{¶19} J.H. posits that, because the officers identified the gun in his pocket before physically retrieving it, it was not concealed. However, it took officers several minutes of handcuffing the boys, standing near J.H., and questioning the teenagers before they noticed the firearm. During Officer Traufler's testimony, when asked

9

whether he could see the firearm, he replied, "No. It was concealed in his pant pocket. I mean, you could feel something heavy in there." Viewing this evidence in the light most favorable to the state, it cannot be said that no rational trier of fact could have found all the essential elements of the offense of carrying a concealed weapon beyond a reasonable doubt. And, the court, as the fact finder, was tasked with assessing the credibility of the witnesses in this case. *See State v. Kidd*, 1st Dist. Hamilton No. C-200356, 2021 Ohio App. LEXIS 3803, *23 (Oct. 29, 2021) ("Generally, credibility is an issue for the trier of fact to resolve."). The juvenile court sat in the best position to observe each witness on the stand and determine their credibility.

{¶20} J.H. also invokes R.C. 2923.12(D)(3), which provides for an affirmative defense to the charge of carrying a concealed weapon if "[t]he weapon was carried or kept ready at hand by the actor for any lawful purpose and while in the actor's own home." J.H. was located inside the bedroom of a residence, asleep, at the time of his arrest. While it seems plausible that J.H. was, in fact, residing in the Clephane home where he was arrested, he bore the burden to establish this point at trial. "The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense other than self-defense, defense of another, or defense of the accused's residence presented as described in division (B)(1) of this section, is upon the accused." R.C. 2901.05(A). J.H. offered no evidence at trial that he actually resided in the Clephane home. And sleeping or temporarily staying in the home of another does not automatically transform the residence into a "home" for purposes of R.C. 2923.12(D). *See State v. Kelly*, 8th Dist. Cuyahoga No. 81992, 2003-Ohio-4057 (holding that, although defendant spent considerable time at the home of his girlfriend, this did not entitle defendant to an

instruction on the affirmative defense of being in his own home for purposes of having a concealed gun).

**{¶21}** Finally, J.H. claims that there is no competent, credible evidence that the gun presented at trial was the same one taken from his person during his arrest. However, as discussed above, Officer Traufler's testimony sufficed to authenticate the weapon. Considering the above, the juvenile court did not lose its way in adjudicating J.H. delinquent as to the carrying a concealed weapon charge, nor did it create a manifest miscarriage of justice.

**{¶22}** We overrule J.H.'s first and second assignments of error insofar as they pertain to his adjudication for carrying a concealed weapon.

\*　　\*　　\*

**{¶23}** In light of the foregoing analysis, we reverse the juvenile court's judgment as to J.H.'s adjudication for weapons under disability and discharge him from further prosecution on that offense in the appeal number C-210663. However, we affirm J.H.'s adjudication for carrying a concealed weapon in the appeal number C-210664.

Judgment accordingly.

**CROUSE** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.