[Cite as *State v. Davis*, 2024-Ohio-5275.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | Hon. Craig R. Baldwin, J.<br>Hon. Andrew J. King, J. |
| -vs- | Case No. 2024 CA 0002 |
| DAISHAUN DAVIS | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common
                             Pleas, Case No. 2023 CR 0478R


JUDGMENT:                    Reversed and Remanded


DATE OF JUDGMENT ENTRY:      November 4, 2024


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JODIE M. SCHUMACHER                   TODD W. BARSTOW
PROSECUTING ATTORNEY                  261 West Johnstown Road
MEGAN HOBART                          Suite 204
ASSISTANT PROSECUTOR                  Columbus, Ohio  43230
38 South Park Street
Mansfield, Ohio  44902

*Wise, P. J.*

{¶1}   Appellant, Daishuan Davis, appeals his conviction of one count of having weapons under disability based on fugitive from justice status.  Appellee is the State of Ohio.

**FACTS AND PROCEDURAL BACKGROUND**

{¶2}   On June 28, 2023, Officer Blake Bammann of the City of Mansfield Police Department filed a complaint charging appellant Daishuan Davis with having weapons under disability, a violation of R.C. 2903.13(A)(1) [F3].

{¶3}   As grounds for the charge, Officer Bammann alleged that Davis had an active warrant out of the Mansfield Police Department and when he approached Davis to make an arrest based on the active warrant, Davis ran and was caught behind the residence.   Davis was in possession of a loaded .38 caliber Smith & Wesson Victory revolver in his waistband. *Complaint and Affidavit filed June 27, 2023.*   Probable cause was found at a preliminary hearing, and the case was bound over to the Richland County Common Pleas Court.

{¶4}   The August 23, 2023 term of the Richland County Grand Jury indicted Davis on three counts: to wit:  Count One, Having Weapons under Disability, with a forfeiture specification of a Smith & Wesson revolver [F3]; Count Two, Using Weapons while intoxicated with a forfeiture specification [M1]; and, Count Three, Obstructing Official Business [M2].

{¶5}   Relevant here, Count One states:

Daishuan Davis, on or about the 26th day of June, 2023 at the county

of Richland aforesaid, did knowingly acquire, have, carry, or use a firearm

or dangerous ordnance and he is a fugitive from justice in violation of Ohio Revised Code Section 2923.13(A)(1), 2923.13(B), **Having Weapons While Under Disability,** a felony of the third degree.

{¶6} Davis pled not guilty at his arraignment and counsel was appointed to represent him. Davis filed a request for discovery, and the state responded with documents delivered via web portal. *Response to Defendant's Request for Discovery, Sept. 1, 2023.*[1]

{¶7} Defendant's counsel filed no pre-trial motions challenging the indictment.

{¶8} On November 8, 2023, Davis appeared before the trial court and changed his plea to all of the charges from not guilty to no contest. The following exchange took place at the plea hearing:

[COURT]: I think, Attorney Dilts, the plan was to plead to the charge, plead no contest, and then he could appeal any issues if he so desires. And I was looking at community control for him so long as he continues to behave between now and his sentencing date. Is that your understanding?

[DILTS]: Yes, Your Honor. As the Court is well aware, this is one where his disability was an unknown disability to him. He had not been served with any documentation. In fact, a warrant had been issued on a summons that had never been served. So, I mean, that was our

---

[1] While the response shows that a Bill of Particulars was attached to court filing and delivered via web portal, no Bill of Particulars is in the record.

understanding, is that he should have had at least some sort of notice, and that's why he wanted to plead no contest.

> [COURT]:     Okay.

> [DILTS]:     But we do acknowledge that, yes, he had the firearm in his possession, although he didn't know that was a crime.  Tr. Plea, at 8-9.

{¶9}    The trial court then stated the particulars of the charges:

> [COURT]:     They say on June 26th, 2023, the Mansfield Police Department saw you at 100 Blymer Avenue in Mansfield.  I guess the police knew about the warrant.  They said you did flee.  They chased you, caught you, and you had a loaded revolver in your waistband. So when you plead no contest, you're telling me that, yeah, you had the weapon.  At the time, they say you were intoxicated, you had been drinking or something of that nature, and when they told you to stop, you ran. Is that all correct?

> [DAVIS]:     Well, I had the weapon.

> [COURT]     Okay.  All right.  So I guess, Attorney Dilts, he would stipulate that at least to the finding for the no-contest plea?

> [DILTS]:     Yes.  Tr. Plea at 10.

> . . .

> [COURT]:     How do you plead to the three charges?

> [DAVIS]:     No contest.

> Tr. Plea at 12.

{¶10}  Davis signed a Crim.R. 11 Judgment Entry that same date acknowledging his plea of no contest to the three indicted charges.  *Judgment Entry, Nov. 9, 2023.*

{¶11} The appellant returned to the trial court for sentencing on November 23, 2023.

> [COURT]:    Attorney Dilts, thoughts on his case?
>
> [DILTS]:    Your Honor, as the Court knows, we allowed him to do a no-contest plea so he could decide whether or not he wanted to take up the issue because he was unaware of the warrant. And I believe everybody knows that is not a falsehood. I mean, he has never been served, he has never been told. So that was the reason for the no-contest plea. Tr. Sentencing at 13-14.

{¶12} Appellant was sentenced to 36 months of community control and if he violates, a prison sentence of 36 months with post release control. Tr. Sentencing at 15, *Sentencing Entry, Nov. 30, 2023*.

{¶*13*} On January 12, 2024, appellant was appointed counsel by the trial court to represent him in an appeal. *Judgment Entry, Appointment of Counsel, Jan. 12, 2024.*

{¶14} Appellant was granted leave to file a delayed appeal by this Court.

{¶15} Appellant appeals his conviction of weapons under disability and alleges one assignment of error:

**ASSIGNMENT OF ERROR**

{¶16} "I.    APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE, THEREBY DENYING HIM HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS. (T. 11/8/23; R. ENTRY 11/30/23) "

{¶17} In his sole assignment of error, appellant claims that his trial counsel was ineffective in failing to challenge the charge of weapons under disability. We agree.

*Ineffective Assistance of Counsel Claim in Plea Process*

{¶18} In this case, Davis contends that his trial counsel was ineffective in advising him to plead no contest in order to preserve his appeal of the "fugitive from justice" component of the weapons under disability charge. We review this claim under an abuse of discretion standard.

{¶19} When a defendant alleges ineffective assistance of counsel arising from the plea process, the defendant must meet the now familiar two-prong test set out in *Strickland v. Washington,* 466 U.S. 668 (1984). *State vs. Romero,* 2019-Ohio-1839, ¶ 14.

{¶20} First, the defendant must show that counsel's performance was deficient. Second, the defendant must demonstrate prejudice resulting from counsel's deficient performance. "The defendant can show prejudice by demonstrating a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at ¶ 16, quoting *Hill v. Lockhart,* 474 U.S. 52 (1985); *State v. Xie,* 62 Ohio St.3d 521.

{¶21} The state argues that because Davis acknowledges that his plea was knowing, voluntary and intelligent, he waived his claim that counsel was ineffective. But whether the plea was entered knowingly and voluntarily is not the correct legal analysis.

{¶22} Counsel's duty to provide competent advice during plea proceedings arises from the constitutional guarantees afforded by the Sixth Amendment right to counsel, not the constitutional guarantee of due process. "The focus is on counsel's deficient

performance and the prejudice arising from that deficiency." *State v. Romero, supra,* at ¶18.

*Effect of No Contest Plea*

{¶23} A no-contest plea differs from a guilty plea and "does not preclude a defendant from asserting upon appeal that the trial court prejudicially erred in ruling on a pretrial motion, including a pretrial motion to suppress evidence." Crim.R. 12(I), *State v. Beasley,* 2018-Ohio-16, ¶ 15. Under Crim.R. 12(C)(2), a trial court may judge before trial whether an indictment is defective. *State v. Parker,* 2023-Ohio-2127, ¶ 19 (5th Dist.).

{¶24} A plea of no-contest, however, is an admission to the truth of the facts contained in the indictment. *State v. Bird,* 1998-Ohio-606, syllabus ("Where the indictment, information, or complaint contains sufficient allegations to state a felony offense and the defendant pleads no contest, the court must find the defendant guilty of the charged offense. (*State ex rel. Stern v. Mascio* (1996), 75 Ohio St.3d 422, 425, 662 N.E.2d 370, 373, followed.").

{¶25} By pleading no-contest, Davis relieved the state from proving the elements of weapons from disability as a fugitive from justice. The burden rests on the state to prove beyond a reasonable doubt that a defendant qualified as a fugitive from justice. *In re: J.T.,* 2014-Ohio-5062 ¶ 22 (1st Dist.).

*Davis meets the deficient-performance prong of Strickland*

{¶26} Under the first prong of *Strickland,* we consider whether Davis' trial counsel satisfied his duty to advise his client about the effect of a no-contest plea.

{¶27}  To meet his advice obligation, it was necessary for Davis' trial counsel to determine the law regarding a no-contest plea and what it preserved and did not preserve for appeal.

{¶28}  The record demonstrates that defense counsel was under the mistaken impression that by pleading no-contest, Davis was preserving his right to appeal the circumstances of his status as a fugitive from justice.

{¶29}  Instead of providing correct and succinct advice, Davis' trial counsel gave him the false assurance that a no-contest plea would preserve his right to challenge the charge of weapons under disability.

{¶30}  Accordingly, we find that the deficient performance prong of *Strickland* was satisfied.

### *Davis meets the second prong of Strickland*

{¶31}  Under the second prong of *Strickland,* Davis must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded no-contest, and would have insisted on going to trial."   *State v. Romero, supra,* at ¶ 28.

{¶32}  In order to consider whether prejudice resulted from trial counsel's advice to enter a no contest plea, we must look to the case law defining a fugitive from justice.

{¶33}  R.C. 2923.13(A)(1) describes the crime of having weapons while under disability and states:

> Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance if . . . [t]he person is a fugitive from justice.

{¶34} This Court has defined a fugitive from justice in *State v. Hall,* 2005-Ohio-167:

A fugitive from justice is a person who (1) is suspected of or has been convicted of a crime; (2) is sought by the jurisdiction so that he may be subjected to its criminal system and (3) has left the jurisdiction and is found within the boundaries of another. ¶ 14 citing *State v. Adkins,* 80 Ohio App. 3d 817, 821 (9th Dist., 1992).

{¶35} In this case, the record contains a complaint and affidavit filed by a police officer from the City of Mansfield that forms the basis for the felony weapons under disability charge. That complaint and affidavit state it was based on an active warrant from Mansfield Police Department.

{¶36} Based on that information, Davis does not meet the definition of fugitive from justice. The record establishes that Davis did not flee the jurisdiction and was not found within the boundaries of another. The prior warrant was from Mansfield Police Department and Davis was found in Mansfield in the same jurisdiction from which the warrant was issued when he was arrested as a fugitive from justice.[2]

{¶37} In *State v. Parker,* 2023-Ohio-2127, (5th Dist.), this court affirmed the trial court's granting a motion to dismiss an indictment on a charge of weapons under disability based on fugitive from justice.

---

[2] The Eighth District Court of Appeals in *State v. March,* 2019-Ohio-2001 (8th Dist.) has held that the fugitive from justice component of weapons under disability requires that defendant have knowledge that he is being sought by police in connection with the offense. Our Court has not yet made that part of the definition.

{¶38} The defendant was charged with weapons under disability. Her fugitive status was based on a warrant out of Portage County. The state offered nothing in terms of why the warrant was issued, when it was issued, or in connection with what charge.

{¶39} The defendant filed a motion to dismiss under Crim. R. 12(C)(2) alleging that the defendant's conduct was constitutionally protected under the Second Amendment and *New York State Rifle & Pistol Association Inc. v. Bruen,* 142 S. Ct. 2111, 2126 (2022).

{¶40} The trial court granted defendant's motion to dismiss the indictment and the state appealed.

{¶41} This Court affirmed the decision of the trial court saying:

> The statement of facts in support of the felony complaint states in pertinent part, 'Dispatch advised the Officer that Parker had an active warrant for possession out of Portage County. Parker admitted she was aware of the warrant and consented to a search of her vehicle.' This identical statement is repeated in appellant's bill of particular filed June 9, 2022. We are left to ask what is an 'active warrant for possession out of Portage County?' The trial court found, and we agree, that appellant did not establish that an active warrant for possession out of Portage County supports restrictions on appellee's Second Amendment right such that the statutes as applied to her are consistent with the Nation's historical tradition of firearm regulation. *Id.* at ¶ 33.

{¶42} In short, the case law from this Court does not support Davis' charge of weapons under disability based on fugitive status. "In fact, we are unaware of any case

where the simple existence of a warrant justified a conclusion that the defendant qualified as a fugitive from justice." *In re. J.H.,* 2022-Ohio-3987, ¶ 12 (1st Dist.).

{¶43}  In this case, we find that the second prong of *Strickland* has been met.  Trial counsel's failure to accurately advise Davis that a no-contest plea did not protect his ability to appeal the weapons under disability charge prejudiced his ability to receive a fair and reliable trial.

{¶44}  Appellant's assignment of error is sustained.

## CONCLUSION

{¶45}  For the reasons stated, the judgment of the Court of Common Pleas of Richland County, Ohio is reversed and the cause is remanded to the court to allow Davis to enter a new plea to the charge of weapons under disability.

{¶46}  Judgment reversed and cause remanded.


By: Wise, P. J.

Baldwin, J., concurs.

King, J., concurs separately.


JWW/kt 1018

*Judge King concurs separately,*

{¶ 47} I join the court's opinion and judgment in full. I write separately, as I did in *State v. Jenkins*, 2024-Ohio-1094 (5th Dist.), to address some of the lurking issues with this section of the statute in light of the new rule announced in *New York State Rifle and Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). I see at least three issues that trial courts will need to consider when facing a challenge under R.C. 2923.13(A)(1).

{¶ 48} First, a trial court must be careful to make a proper record when accepting a plea under R.C. 2923.13. In two of our previous cases, we reviewed a Second Amendment challenge after a no contest plea but following a motion to dismiss. *State v. Skaggs*, 2024-Ohio-4781 (5th Dist.) (King, J., dissenting); *State v. Striblin*, 2024-Ohio-2142 (5th Dist.). Those reviews were straightforward because Crim.R. 12(I) allows us to consider the denial of motions on appeal. Here, we reverse because of ineffective assistance of counsel.

{¶ 49} Beyond these situations, trial courts should take special care anytime the right to keep and bear firearms is implicated. Among the reasons is Supreme Court precedent that allows Second Amendment challenges to the constitutionality of the statute to proceed even after a guilty plea. *Class v. United States*, 583 U.S. 174 (2018).

{¶ 50} In *Class*, the defendant pleaded guilty under 40 U.S.C. 5104(e)(1) for having a firearm in his vehicle which was parked on U.S. Capitol Grounds. Before pleading guilty, he made both a due process claim and a Second Amendment challenge. At its most basic, his claim was he lacked fair notice that firearms were banned where he parked. He appealed to the D.C. Circuit which held he could not appeal those claims after pleading guilty.

{¶ 51} The Supreme Court reversed the D.C. Circuit, re-affirming the *Menna-Blackledge* doctrine.[3] The doctrine allows constitutional challenges to proceed on appeal after a guilty plea if, judged on the face of the record, a successful claim would extinguish the government's power to prosecute the case. *Class* at 179. Although *Class* dealt with a federal prosecution, both *Menna* and *Blackledge* originated with state prosecutions, demonstrating the rule applies to state prosecutions.

{¶ 52} The *Menna-Blackledge* doctrine is not an issue that often comes up for state trial courts. But with its clear connection to the Second Amendment, courts should ensure it makes a proper record to sustain the conviction—even after a guilty plea. Whether or not a guilty plea would terminate claims under state law is beside the point under *Menna-Blackledge*. This issue dovetails with my second point. *Bruen*, as a matter of federal constitutional law, puts the burden on the state to show the challenged regulation is consistent with our nation's tradition of firearm regulations. *Striblin*, 2024-Ohio-2141, at ¶ 23 (5th Dist.), citing *Bruen,* 142 S.Ct. 2111, 2126. In Ohio, we usually apply the standard that a challenger must demonstrate beyond a reasonable doubt the statute is unconstitutional. *State v. Noling*, 2013-Ohio-1764, ¶ 25. In contrast, this challenge under a federal right brings with it the standard of review established by the Supreme Court of the United States—not our usual state imposed standard.

{¶ 53} A possible reason for this federally mandated standard is because prior to *Bruen*, the Supreme Court's Second Amendment precedent was largely ignored by lower courts. Nino Monea, *State Constitutional Rights to Bear Arms Ten Years After Heller/McDonald,* 82 U.Pitt.L.Rev. 2021 (2021) (the author reviewed 800 state court

---

[3]*Menna v. New York,* 423 U.S. 61 (1975); *Blackledge v. Perry,* 417 U.S. 21 (1974).

decisions and found little impact); Ruben & Blocher, *From Theory to Doctrine: An Empirical Analysis of the Right to Keep and Bear Arms After Heller*, 67 Duke L.J. 1433, 1475 (2018) (finding only about an 8% success rate of challengers in the federal appellate circuits). If that was indeed a reason for the rule the Supreme Court supplied in *Bruen,* then we should take special care to adhere to it. Irrespective of the reason, Article VI of the United States Constitution requires state judges to afford federal law a superior function over state law. This necessarily means we must hold the state to its burden. So, the state must ensure that the record properly reflects it discharged its obligation to carry the burden in order to be successful on appeal.

{¶ 54} Finally, I have concerns about whether our prior precedent can be maintained after *Bruen.* Before turning to our standard, the issue not before us today is whether section (A)(1) is constitutional, and that question deserves a full briefing on that subject before issuing a ruling. But a brief examination is in order. The recent case of *United States v. Rahimi,* 602 U.S. ___, 144 S.Ct. 1889 (2024), revolved around the principal that emerged from the "going armed laws." There are at least similarities between section (A)(1) and the principal undergirding *Rahimi*, which might be enough to sustain it.

{¶ 55} But one obvious distinction is that the statutory scheme in *Rahimi* provided for notice and an opportunity to be heard prior to a judicial determination that would disarm the person in question. R.C. 2923.13(A)(2), (3), and (5) provides for such a judicial determination before a person can be disarmed. *See Skaggs*, 2024-Ohio-4781, ¶ 57 (5th Dist.) (King, J., dissenting). Today we need not reach the question of whether absence of a judicial determination may be fatal to R.C. 2923.13(A)(1). But, if nothing else, to deprive

someone of their constitutional right, we must be sure that person has fair notice. And that is the thrust of my point here.

{¶ 56} In writing for the court, Judge Wise cites to *Hall,* which discussed our standard. As I see it, now that the right to keep and bear arms is properly understood as an individual right protected by the federal constitution, we must ensure that people whose right is impaired by legislation receive fair notice before a criminal prosecution. *See e.g., Snyder v. United States,* ___ U.S. ___, 144 S.Ct. 1947 (2024) (the Supreme Court discussed at length the need for fair notice in criminal statutes) and *State v. Collier,* 62 Ohio St. 3d 267, 270 (1991).

{¶ 57} The problem with our current standard is illustrated by this case: it imposes criminal liability without ensuring fair notice to the defendant. In contrast to our rule, other districts have adopted constructions of section (A)(1) that require a showing that a defendant knew or should have known of the defendant's fugitive status. *State v. March,* 2019-Ohio-2001, ¶ 21 (8th Dist.); *State v. Cherry,* 2007-Ohio-2133, ¶ 21 (2d Dist.); *see also In re J.H.,* 2022-Ohio-3987, ¶ 11 (1st Dist.). Because the result today does not require us to overrule our current precedent, I join in full. But I maintain doubt our present standard can be maintained.