[Cite as *State v. Kortz*, 2013-Ohio-121.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY   COUNTY

STATE OF OHIO                                :
                                             :       Appellate Case No.   25041
            Plaintiff-Appellee               :
                                             :       Trial Court Case No.   10-CR-3142
v.                                           :
                                             :
SHAWN W. KORTZ                               :       (Criminal Appeal from
                                             :        Common Pleas Court)
            Defendant-Appellant              :
                                             :
                                    . . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of January, 2013.

. . . . . . . . . .

MATHIAS H. HECK, JR., by R. LYNN NOTHSTINE, Atty. Reg. #0061560, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
            Attorney for Plaintiff-Appellee

MICHAEL C. THOMPSON, 5 North Williams Street, Wright-Dunbar Business Village, Dayton, Ohio 45407
            Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1}      Shawn W. Kortz appeals from his conviction and sentence on charges of

felony murder and having a weapon while under disability.

{¶ 2} Kortz advances three assignments of error on appeal. First, he contends the trial court erred in not instructing the jury on involuntary manslaughter, assault, and recklessness. Second, he challenges the legal sufficiency of the evidence to support his felony-murder conviction. Third, he argues that the felony-murder conviction is against the manifest weight of the evidence.

{¶ 3} The evidence at trial established that Kortz, a truck driver, had driven from Gloucester, Massachusetts, to his home in Moraine, Ohio, on September 18, 2010. He spent that evening drinking in his driveway with Rick Johnson and Michael Hollon, who lived together down the street. Kortz maintained a social relationship with the two men, and Hollon had helped him work on a vehicle earlier that day. At some point that evening, Johnson returned to the house he shared with Hollon and went to bed. Johnson awoke later that night and discovered that Hollon had not returned. Johnson could see a light in Kortz's garage. He assumed Kortz and Hollon were still drinking. Johnson went back to bed after sending Hollon a text message and getting no response. When Johnson awoke in the morning, he saw police at Kortz's residence and discovered Hollon was dead.

{¶ 4} Another neighbor, Jeffrey Soter, had found Hollon's lifeless body face down across a broken table in Kortz's lower-level family room. Some furniture in the room was overturned. Hollon's denture plate was found outside his mouth, his face was bloody, and there was a pool of blood on the floor. Police found blood spatter on the walls, ceiling, and furniture. They also found blood in the master bathroom upstairs and diluted blood in a sink. An autopsy revealed that Hollon had sustained bruising, swelling, and abrasions on his face, bruising on his arms, chest, and upper abdomen, fifteen rib fractures, a broken nose, bruising

in the muscles around his face, internal bruising of the head, and damaged neck cartilage. A toxicology analysis revealed that Hollon's blood-alcohol level was .375, which was "a very high level." The coroner determined Hollon's cause of death to be multiple blunt-force trauma with evidence of strangulation.

{¶ 5}    Police located Kortz in Kentucky on September 19, 2010. He was taken into custody after trying to elude police in his vehicle. A loaded handgun was found on his front passenger seat. Police observed a significant amount of cuts, bruising, and swelling on Kortz's right hand, particularly compared to his left hand. Police did not notice any injuries to Kortz's face. He did have some bruising on his arms and chest as well as some scratches and scrapes.

{¶ 6}    At trial, Kortz, who is right handed, testified that he had no recollection how Hollon had died. Kortz claimed he remembered being downstairs with Hollon in his "man cave." The next thing he recalled was standing in his bathroom, shirtless, with blood on his body. Kortz remembered calling his wife, who was out of town, and telling her he did not know how he had gotten blood on himself. According to Kortz, he proceeded to take a shower before going downstairs and discovering Hollon's body. Kortz testified that he "freaked out" and called his wife again to tell her Hollon appeared to be dead.  His next memory was of driving on the highway before being stopped by police.

{¶ 7}    The trial court denied Kortz's request to have the jury instructed on the lesser-included offense of involuntary manslaughter. Kortz sought the instruction based on a theory that he had killed Hollon in the course of committing simple assault under R.C. 2903.13(B) by recklessly causing serious physical harm.  Kortz did not dispute that Hollon had suffered serious physical harm. He argued, however, that the jury reasonably could find he

had inflicted the harm recklessly rather than knowingly. The trial court disagreed and denied the request.

{¶ 8} The jury found Kortz guilty of felony murder and having a weapon while under disability. He was acquitted on an evidence-tampering charge based on his act of showering and washing away Hollon's blood. The trial court imposed an aggregate prison sentence of eighteen years to life. This appeal followed.

{¶ 9} In his first assignment of error, Kortz challenges the trial court's denial of a jury instruction on involuntary manslaughter, assault, and recklessness. Kortz notes that he specifically requested instructions on involuntary manslaughter and recklessness. Although he did not specifically ask for an assault instruction, he contends the request was encompassed by and implicit in his request for an involuntary manslaughter instruction based on a killing in the course of a simple assault. In response, the State asserts that none of the instructions were warranted.

{¶ 10} "Jury instructions on lesser included offenses must be given when the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser included offense." (Citations omitted.) *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶47. "In other words, the trial court must instruct the jury on the lesser included offense if under any reasonable view of the evidence it would be possible for the jury to find defendant not guilty of the greater offense and guilty of the lesser offense. The trial court's decision regarding whether to give a jury instruction on a lesser included offense will not be disturbed on appeal absent an abuse of the court's discretion." *Id.*

{¶ 11} With the foregoing standards in mind, we turn to Kortz's arguments. Kortz expressly requested a jury instruction on involuntary manslaughter based on a killing during the commission of a simple assault. (Tr. Vol. III at 500-501; Tr. Vol. IV at 724-727). A conviction for involuntary manslaughter based on assault under R.C. 2903.13(B) would require a finding that he recklessly caused serious physical harm to Hollon.[1] In making his argument, Kortz specifically asked for an instruction defining recklessness. (Tr. Vol. III at 500). Therefore, he properly preserved his jury-instruction issues for appellate review and we disagree with the State's argument that we should review the jury instruction question under a plain-error analysis.[2] Despite this conclusion, we find no abuse of discretion in the trial court's denial of a jury instruction on involuntary manslaughter, simple assault, and recklessness.

{¶ 12} To establish felony murder based on felonious assault under R.C. 2903.11(A)(1), the State was required to prove that Kortz *knowingly* caused serious physical harm to Hollon. The requested involuntary manslaughter instruction would have required proof that Kortz *recklessly* caused serious physical harm to Hollon. *See* R.C. 2903.13(B). Kortz was not entitled to an instruction on involuntary manslaughter, simple assault, and

---

[1] Alternatively, misdemeanor assault under R.C. 2903.13(A) would require a finding that Kortz "knowingly" caused "physical harm" to Hollon. Although Kortz briefly mentions R.C. 2903.13(A) under his first assignment of error, he conceded at trial that Hollon had suffered "serious physical harm," not just "physical harm." In addressing the lesser-included-offense issue, defense counsel admitted to the trial court: "I just don't see how it cannot be serious physical harm * * *." (Tr. Vol. III at 501). Therefore, for purposes of appeal, Kortz has waived any argument with regard to assault under R.C. 2903.13(A).

[2] The State maintains that we are limited to plain-error review for all of the instructions at issue because Kortz made no written request under Crim.R. 30(A). We disagree. A defendant's objection to the lack of a lesser-included-offense instruction preserves the issue for appeal whether or not their has been a written proffer of the desired instruction. *State v. Montgomery*, 2d Dist. Montgomery No. 17203, 1999 WL 252711, *4 (April 30, 1999) ("By objecting to the trial court's refusal to instruct the jury on the lesser offense of voluntary manslaughter, Montgomery preserved the error for appellate review.").

recklessness, however, because the evidence at trial does not reasonably support an acquittal on the crime charged and a conviction on the lesser included offense of involuntary manslaughter predicated on simple assault. Specifically, the evidence does not support a finding that Kortz recklessly, but not knowingly, caused serious physical harm to Hollon.

{¶ 13}  "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result[.]" R.C. 2901.22(B). "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result[.]" R.C. 2901.22(C). Kortz testified he did not know what happened. We can see no reasonable view of the evidence where it would be possible for the jury to find that Kortz recklessly caused serious physical harm to Hollon but did not knowingly cause that harm. The evidence suggested that Hollon strangled and suffered numerous blunt-force blows to his face, head, and chest. A jury could not reasonably conclude that Kortz engaged in this attack without being aware that serious physical harm was probable. According to the coroner, in addition to being severely bruised and bloodied, Hollon's nose was fractured, fifteen ribs were broken, and he suffered damage to the cartilage in his neck that indicated manual strangulation.   Even if the two men were engaged in "mutual combat," as Kortz theorizes on appeal, that would not negate the evidence that he knowingly caused serious physical harm when he strangled and severely beat Hollon.

{¶ 14}   Kortz also separately contends the trial court should have instructed the jury on recklessness because it is the culpable mental state for having a weapon while under disability. In support, he cites *State v. Clay*, 120 Ohio St.3d 528, 2008-Ohio-6325, 900 N.E.2d 1000. In *Clay*, the Ohio Supreme Court held that to prove the offense of having a weapon

while under a disability in violation of R.C. 2923.13(A)(3), the State had to show the defendant acted recklessly regarding his awareness that he was under indictment. The Ohio Supreme Court took a "fresh look" at that issue, however, in *State v. Johnson*, 128 Ohio St.3d 107, 2010-Ohio-6301, 942 N.E.2d 347, ¶40. In so doing, it declined to import the catch-all mental state of recklessness into the weapon-under-disability statute, reasoning:

> Johnson was charged with having weapons while under disability as defined in R.C. 2923.13(A)(3): "(A) * * * [N]o person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply: * * * (3) The person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse * * *." (Emphasis added.).

> In defining the offense, the General Assembly chose to specify a culpable mental state for the element of possession of a weapon, but it did not assign an additional mens rea for the additional elements of being under indictment or having been convicted. Because R.C. 2923.13(A), which is part of the definition of the offense, already contains the mens rea of "knowingly," R.C. 2901.21(B) does not apply. We therefore need not determine whether there is a plain indication of purpose to impose strict liability for these additional elements. Furthermore, because R.C. 2901.21(B) does not apply, there is no statutory provision that allows us to insert the mens rea recklessness into the statute. As a result, for the offense of having weapons while under disability defined by R.C. 2923.13(A)(3), the state is not required to prove a

culpable mental state for the element that a defendant is under indictment for or

has been convicted of any offense involving a drug of abuse.

*Id.* at ¶41-42.

{¶ 15} In the present case, Kortz was charged with violating R.C. 2923.13(A)(1), which prohibits a person from knowingly carrying a firearm if the person is a fugitive from justice. Although *Johnson* involved a violation of subsection (A)(3), its rationale is equally applicable here. *Cf. State v. Lofton*, 10th Dist. Franklin No. 11AP-865, 2012-Ohio-2527, ¶18 (finding *Johnson* applicable to a violation of R.C. 2923.13(A)(2)). Because the statute required proof that Kortz knowingly possessed a firearm, the State was not required to prove a culpable mens rea for the additional element that he was a fugitive from justice. Therefore, the trial court did not err in failing to give a recklessness instruction in connection with the weapons-under-disability charge. The first assignment of error is overruled.

{¶ 16} In his second and third assignments of error, Kortz challenges the legal sufficiency and manifest weight of the evidence to support his felony-murder conviction. In both assignments of error, he contends the evidence does not support a finding that he knowingly caused serious physical harm to Hollon. Kortz maintains that "[i]t is just as plausible, with Hollon's high level of intoxication that he could have fallen down stairs onto furniture, or received [his] injuries in a fight he started." He also asserts that "[k]nowingly cause serious physical harm cannot be inferred without evidence establishing a proximate connection between Hollon's injuries an[d] appellant's conduct." Finally, Kortz suggests that "he did not have the ability to knowingly cause or attempt to cause serious physical harm to Michael Hollon because his intoxication was involuntary." More specifically, Kortz contends

"his fatigue from driving 13 to 14 hours caused him to experience diminished mental and memory functions." Although his own consumption of alcohol was voluntary, Kortz argues that his "intoxication could have been involuntary if it was an unanticipated side effect of extreme fatigue and alcohol."

{¶ 17}  When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 18}  Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily

against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 19}   With the foregoing standards in mind, we conclude that Kortz's felony-murder conviction is supported by legally sufficient evidence and is not against the weight of the evidence. The State's evidence established that the right-handed Kortz had a significant amount of cuts, bruising, and swelling on his right hand. Hollon's body sustained numerous blunt-force trauma injuries that the coroner testified were consistent with being punched. Hollon's neck also revealed evidence of manual strangulation. The only person in the house with Hollon was Kortz, who admitted having blood on himself. Under these circumstances, the State presented legally sufficient evidence to establish that Kortz caused the death of Hollon as a proximate result of committing felonious assault. Such a conclusion also is not against the manifest weight of the evidence. Kortz's theory that Hollon may have sustained his injuries during a fall down the stairs is inconsistent with the injuries to Kortz's right hand, the evidence of manual strangulation, and the blood spatter on the walls and ceiling. In assessing witness credibility and resolving conflicts in the evidence, we cannot say the jury clearly lost its way and created a miscarriage of justice.

{¶ 20}   Finally, we reject Kortz's suggestion that his intoxication may have been involuntary due to fatigue and may have caused him to lack the capacity to act knowingly. Involuntary intoxication is an affirmative defense. *State v. LeMasters* ,11th Dist. Lake No. 2007-L-129, 2008-Ohio-2139, ¶42.  Kortz has not identified anywhere in the record where he raised that defense below. Nor did he request a jury instruction on involuntary intoxication. In any event, we would find that involuntary intoxication was not proven by a preponderance of

the evidence even if Kortz had raised it below. The second and third assignments of error are overruled.

{¶ 21}   The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

FAIN, P.J., and DONOVAN, J., concur.

Copies mailed to:

Mathias H. Heck
R. Lynn Nothstine
Michael C. Thompson
Hon. Barbara P. Gorman