[Cite as *State v. Mingo*, 2024-Ohio-543.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No. 30588 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| KASHMAIR MINGO | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR-2021-04-1284-B |

DECISION AND JOURNAL ENTRY

Dated: February 14, 2024

---

STEVENSON, Judge.

{¶1} Appellant, Kashmair Mingo, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} At approximately 6:00 p.m. on December 3, 2020, T.C. was shot multiple times and died while inside his vehicle near the intersection of Tampa Avenue and 18th Street in Akron, Ohio. Several items were stolen from T.C. at the time of the murder.

{¶3} A surveillance video from a nearby Nestor Avenue residence showed three individuals running from the murder scene and to a Nestor Avenue apartment complex at approximately 6:01 p.m. A taller individual is seen in the video wearing white shoes and camouflage pants.

{¶4} The day after the murder, on December 4, 2020, a ring stolen from T.C. was pawned at a pawn shop. Police obtained surveillance video from the pawn shop. Mr. Mingo and two other

individuals, identified as D.D. and J.R., are seen in the video pawning T.C.'s ring and other items that belonged to T.C. In the pawn shop surveillance video, as well as the surveillance video from the Nestor Avenue residence, Mr. Mingo is wearing white shoes and camouflage pants. According to cell phone location records, Mr. Mingo's phone was in the vicinity of the murder scene around the time of T.C.'s murder.

{¶5} A warrant for Mr. Mingo's arrest, for his alleged involvement in T.C.'s murder, was issued in March, 2021. Mr. Mingo was arrested on the warrant. Mr. Mingo had a firearm in his possession at the time of arrest.

{¶6} Mr. Mingo waived his *Miranda* rights after his arrest and submitted to a police interview. Mr. Mingo denied being in Akron on the day of T.C.'s murder or in the days after the murder.

{¶7} A jury found Mr. Mingo guilty of murder in violation of R.C. 2903.02(B), aggravated robbery in violation of R.C. 2911.01(A)(1), obstructing justice in violation of R.C. 2921.32(A)(5), and having weapons while under disability in violation of R.C. 2923.13(A)(1). The jury also found Mr. Mingo guilty of the firearm specifications attached to the murder and aggravated robbery counts. The jury returned not guilty verdicts on the counts for aggravated murder in violation of R.C. 2903.01(B) and murder in violation of R.C. 2903.02(A). The trial court imposed a life prison term with parole eligibility after 15 years on the murder conviction and nine-month prison terms on each of the obstructing justice and having weapons while under disability convictions, which were ordered to run concurrently. The trial court imposed three-year prison terms for both firearm specifications, which were ordered to run consecutively to each other and to the other imposed prison terms. The trial court merged the aggravated robbery conviction

for sentencing purposes and no sentence was imposed on that charge. The trial court's aggregate prison sentence was life with parole eligibility after 21 years.

{¶8}    Mr. Mingo appeals his convictions raising six assignments of error for this Court's review.

I.

## ASSIGNMENT OF ERROR I

### A POSSIBLE CONFLICT OF INTEREST OF COUNSEL REQUIRES REMAND[.]

{¶9}    Mr. Mingo argues in his first assignment of error that there is a possible conflict of interest between trial counsel's representation of him and another attorney's representation of co-defendant D.D.  The basis of the alleged conflict is that Mr. Mingo's trial counsel and D.D.'s attorney purportedly shared office space at some point during their representation of the co-defendants.  Mr. Mingo asserts that neither himself nor the visiting trial judge was aware of this possible conflict at the time of trial. We overrule this assignment of error.

{¶10}   The Sixth Amendment right to the effective assistance of counsel secures to a criminal defendant both the right to competent representation and the right to representation that is free from conflicts of interest.  *Wood v. Georgia*, 450 U.S. 261, 271 (1981). "[T]he United States Constitution is violated by an actual conflict of interest, not a possible one." *State v. Gillard*, 78 Ohio St.3d 548, 552 (1997). If a possible conflict of interest exists, "a defendant is entitled only to an inquiry by the trial court." *Id*. "[A]bsent some factor that would alert the trial court about a possible conflict of interest * * *, the court has no affirmative duty to [inquire]." *State v. Williams,* 166 Ohio St.3d 159, 2021-Ohio-3152, ¶ 1.

{¶11}   A possibility of a conflict exists if the "'interests of the defendants may diverge at some point so as to place the attorney[s] under inconsistent duties.'" *State v. Dillon*, 74 Ohio St.3d

166, 168 (1995), quoting *Cuyler v. Sullivan*, 446 U.S. 335, 356, fn. 3 (1980). The United States Supreme Court has held that, "the possibility of a conflict of interest is insufficient to impugn a criminal conviction." *Cuyler* at 350. An actual conflict of interest "exists if, 'during the course of the representation, the defendants' interests do diverge with respect to a material factual or legal issue.'" *Dillon* at 169, quoting *Cuyler* at 356. *Accord Gillard* at 552.

{¶12} For purposes of the Sixth Amendment, an "actual conflict of interest" is "a conflict of interest that adversely affects counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 172, fn. 5 (2002); *see also Gillard* at 552. To prove an "actual conflict of interest," the defendant must show that his counsel "actively represented conflicting interests," and that the conflict "actually affected the adequacy of his representation." *Id.* at 167, 163, quoting *Cuyler* at 348-349. To show such a conflict, a defendant must "'point to specific instances in the record to suggest an actual conflict or impairment of [his] interests.'" *United States v. Hall*, 200 F.3d 962, 965-966 (6th Cir.2000), quoting *Thomas v. Foltz*, 818 F.2d 476, 482 (6th Cir.1987) (internal quotation omitted). Mr. Mingo does not argue that an actual conflict of interest existed. He argues, rather, that there was a possible conflict of interest and that this matter should be remanded for further inquiry.

{¶13} As previously set forth, unless there is some factor alerting the trial court as to a possible conflict of interest, the trial court has no affirmative duty to inquire. *Williams,* 166 Ohio St.3d 159, 2021-Ohio-3152, at ¶ 1. Ohio courts have recognized that neither the dual representation of co-defendants nor the attorneys' office-share arrangement imposes an affirmative duty on the trial court to inquire about any possible conflicts of interests. *Id.* at ¶ 17 (holding that the attorneys' dual representation of the defendant and his wife did not impose upon the trial court an "affirmative duty to inquire into a possible conflict * * *."); *State v. Bradley*, 8th Dist. Cuyahoga No. 84204, 2004-Ohio-5871, ¶ 19 (concluding that trial counsel's office-share arrangement with the

prosecutor did not create an actual conflict of interest). If no objection or issue related to a possible conflict of interest is raised in the trial court, such that the trial court did not have an affirmative duty to inquire, then the appellate court "must now determine whether an actual conflict of interest adversely affected the attorney's performance." *State v. Walker*, 130 Ohio App.3d 247, 251 (9th Dist.1998).

{¶14} Mr. Mingo maintains that neither himself nor the trial judge was aware of the alleged office sharing between his trial counsel and D.D.'s counsel. Accordingly, we cannot say that the trial court was aware of any possible conflict of interest of trial counsel, thereby necessitating further inquiry. Even if the trial judge had been aware of the attorney's office sharing arrangement, that arrangement by itself would not have necessitated further inquiry by the trial court.

{¶15} This Court must now determine whether an actual conflict of interest adversely affected trial counsel's performance. *See Cuyler*, 446 U.S. 335, at 348. In this case, Mr. Mingo does not argue or point to any portions of the record to suggest that an actual conflict of interest existed. Mr. Mingo simply claims that there was a possible conflict of interest. Mr. Mingo does not point to any alleged errors in trial counsel's defense strategy, let alone demonstrate how counsel's strategy decisions were motivated by any split loyalties or other interests. Mr. Mingo has not identified any alternative strategy or theory for his defense that could have been taken.

{¶16} Mr. Mingo has not shown an actual conflict of interest and, accordingly, is not entitled to a remand or any post-trial discovery as requested in his first assignment of error. Mr. Mingo's first assignment of error is without merit and is overruled.

### ASSIGNMENT OF ERROR II

**THE CONVICTION AND SENTENCE FOR AGGRAVATED ROBBERY IS CONTRARY TO LAW.**

{¶17} Mr. Mingo maintains in his second assignment of error that the conviction and sentence for aggravated robbery is contrary to law. Mr. Mingo argues that the State did not produce sufficient evidence to support an aggravated robbery conviction as it only offered evidence that T.C. died, and that this does not satisfy the definition of "serious physical harm to persons" in R.C. 2901.01(A)(5). For the reasons set forth below, we overrule this assignment of error.

{¶18} Count four of the indictment charged Mr. Mingo with aggravated robbery "in violation of Section 2911.01(A)(1), 2911.01(C) of the Ohio Revised Code[.]" The jury found Mr. Mingo "**GUILTY**, beyond a reasonable doubt, of **AGGRAVATED ROBBERY** in violation of **R.C. 2911.01(A)(1)** * * * ."

{¶19} R.C. 2911.01, titled "Aggravated robbery," provides:

(A)   No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

(1)   Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;

* * *

R.C. 2911.01(A)(1) does not include a physical harm requirement. *See State v. Bailey,* 8th Dist. Cuyahoga No. 100993, 2014-Ohio-4684, ¶ 31 ("[defendant's] aggravated robbery convictions under R.C. 2911.01(A)(1) had no physical harm requirement.")

{¶20} Mr. Mingo was charged with aggravated robbery in violation of R.C. 2911.01(A)(1) for having a "deadly weapon" at the time of "attempting or committing a theft offense[.]" Contrary to what Mr. Mingo now alleges, the State did not need to prove that he inflicted or attempted to inflict serious physical harm.   The sole argument presented in the second assignment of error is that the State failed to establish that Mr. Mingo caused serious or substantial physical harm. Mr.

Mingo does not argue that the State failed to establish that he committed aggravated robbery under R.C. 2911.01(A)(1), the statute under which he was charged.

{¶21} Mr. Mingo's argument in his second assignment of error is based on a false premise, an element that the State was not required to prove. *See State v. Graham*, 9th Dist. Wayne No. 98CA0007, 1998 WL 887151 (Dec. 16, 1998); *State v. J.B.*, 9th Dist. Summit No. 29286, 2019-Ohio-4659 (overruling assignments of error that are based on a false premise.)  As the second assignment of error is solely based on a false premise, it is overruled.

**ASSIGNMENT OF ERROR NO. III**

**THE CONVICTION AND SENTENCE FOR COMPLICITY TO COMMIT FELONY MURDER IS CONTRARY TO LAW.**

{¶22} Mr. Mingo argues in his third assignment of error that the conviction and sentence for complicity to commit felony murder is contrary to law. Mr. Mingo argues: 1) the jury issued inconsistent verdicts; 2) his murder conviction fails as the predicate offense of aggravated robbery was legally inadequate; 3) the State failed to present sufficient evidence to prove that he was one of the murderers; 4) because the State failed to prove his identity as one of the murderers, his murder conviction is against the manifest weight of the evidence; and 5) the trial court issued an erroneous complicity jury instruction.  We overrule this assignment of error.

**Inconsistent Jury Verdict**

{¶23} Mr. Mingo first argues in his third assignment of error that the jury rendered inconsistent verdicts. Mr. Mingo's argument is based on the false premise that the jury found him guilty of complicity to aggravated murder and complicity to commit murder. The jury, however, did not render those verdicts.

{¶24} The jury found Mr. Mingo not guilty of count one, aggravated murder in violation of R.C. 2903.01(B); not guilty of a firearm specification to count one; not guilty of count two,

murder in violation of R.C. 2903.02(A); and, not guilty of a firearm specification to count two. Mr. Mingo was found guilty of count three, murder in violation of R.C. 2903.02(B); guilty of a firearm specification to count three; guilty of count four, aggravated robbery in violation of R.C. 2911.01(A)(1); guilty of a firearm specification to count four; guilty of count five, obstructing justice in violation of R.C. 2921.32(A)(5); and guilty of count six, having weapons while under disability in violation of R.C. 2923.13(A)(1). Contrary to Mr. Mingo's argument, the jury did not find him guilty of complicity to commit aggravated murder or complicity to commit murder in violation of R.C. 2903.02(A).

{¶25}  Mr. Mingo's inconsistent jury verdict argument presented in his third assignment of error is based on a false premise and is, accordingly, overruled. *See Graham*, 9th Dist. Wayne No. 98CA0007, 1998 WL 887151; *J.B.*, 9th Dist. Summit No. 29286, 2019-Ohio-4659.

## Underlying Offense of Aggravated Robbery

{¶26}  Mr. Mingo next argues in his third assignment of error that, for the reasons set forth in his second assignment of error, the aggravated robbery conviction is subject to reversal. Mr. Mingo maintains that, because the predicate aggravated robbery conviction is subject to reversal, the murder conviction is also subject to reversal.

{¶27}  As previously set forth, Mr. Mingo was charged with aggravated robbery in violation of R.C. 2911.01(A)(1). To obtain a R.C. 2911.01(A)(1) conviction, the State was not required to prove that Mr. Mingo  inflicted or attempted to inflict serious physical harm. Mr. Mingo relied upon a false premise in arguing that the evidence did not support an aggravated robbery conviction in violation of R.C. 2911.01(A)(1). Mr. Mingo did not develop a sufficiency argument pertaining to the aggravated robbery statute under which he was found guilty, R.C. 2911.01(A)(1), and this Court will not develop one on his behalf. *See State v. Franks*, 9th Dist.

Summit No. 28533, 2017-Ohio-7045, ¶ 16 ("Where an appellant fails to develop an argument in support of his assignment of error, this Court will not create one for him."). Accordingly, to the extent that Mr. Mingo alleges that his murder conviction fails as the predicate offense of aggravated robbery was legally inadequate, this argument is not well-taken.

### Murder (R.C. 2903.02(B)) Conviction

{¶28} Mr. Mingo next argues in his third assignment of error that the State failed to establish his identity and that the murder conviction is against the sufficiency and manifest weight of the evidence. In presenting this argument, we note that Mr. Mingo has not separately argued sufficiency and manifest weight. "[S]ufficiency and manifest weight are separate and distinct questions, and this Court has repeatedly noted that it is not appropriate to combine sufficiency and manifest weight arguments within a single discussion." *State v. Zappa*, 9th Dist. Wayne No. 20AP0025, 2022-Ohio-243, ¶ 6, citing *State v. Seibert*, 9th Dist. Wayne Nos. 20AP0013, 2012-Ohio-3069, 2021 WL 4059410, ¶ 13, quoting *State v. Vincente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, 2010 WL 5276993, ¶ 18, and *State v. Mukha*, 9th Dist. Wayne No. 18AP0019, 2018-Ohio-4918, 2018 WL 6493282, ¶ 11. *See also* App.R. 12(A)(2) ("The court may disregard an assignment of error presented for review if the party raising it fails to * * * argue the assignment separately in the brief[.]"); Loc.R. 16(A)(7) ("Each assignment of error shall be separately discussed * * * ."). "Moreover, 'these concepts differ both qualitatively and quantitatively.'" *Zappa* at ¶ 6, quoting *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25. To aid the administration of justice, however, we choose to exercise our discretion and will separately consider Mr. Mingo's combined arguments.

**Murder (R.C. 2903.02(B)) Conviction – Sufficiency of the Evidence**

{¶29} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390. "For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State." *Zappa* at ¶ 7, citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This Court does not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). Evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*

{¶30} Mr. Mingo was found guilty of murder in violation of R.C. 2903.02(B) which provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *." The State agrees that it had the burden at trial of proving beyond a reasonable doubt Mr. Mingo's identity as one of the murderers. Mr. Mingo argues in his third assignment of error that the State failed to produce sufficient evidence of his identity to sustain the murder conviction.

{¶31} T.C. was murdered on December 3, 2020 at approximately 6:00 p.m. near the intersection of Tampa Avenue and 18th Street in Akron. At Mr. Mingo's trial, the trier of fact was presented with lay witness and expert testimony and numerous exhibits, including cell phone location records and surveillance videos. The State presented cell phone location records indicating that Mr. Mingo's cell phone was in the area of T.C.'s murder near the time of the murder. The State also presented a surveillance video from a house near the murder scene showing three

individuals running away from the murder scene shortly after the murder and towards Nestor Avenue apartment complex where Mr. Mingo lived. A taller individual is seen in that surveillance video wearing white shoes and camouflage pants.

{¶32} The State presented testimony and evidence of a lead the police received that, the day after the murder, a ring stolen from T.C. was pawned at a local pawn shop. A surveillance video from the pawn shop was shown to the jury and admitted into evidence. Three individuals are seen in this surveillance video attempting to pawn several items that belonged to T.C., including the ring and a pendant necklace that were stolen as part of the murder. Mr. Mingo, D.D., and J.R. were identified as the three individuals in the pawn shop video. In the pawn shop video, Mr. Mingo is wearing white shoes and camouflage pants, the same type of pants and shoes seen in the December 3, 2020 home surveillance video. There was also testimony that, the next day, Mr. Mingo was with D.D. and J.R. in Barberton during an incident that led to J.R.'s arrest for an unrelated criminal offense.

{¶33} There was testimony that, when police went to arrest Mr. Mingo on his warrant in March, 2021, Mr. Mingo did not initially present himself to the officers. Mr. Mingo gave a statement to police after his arrest denying that he was in the Akron area in December, 2020. The cell phone location records contradicted Mr. Mingo's claim that he was in Wisconsin with his father in December, 2020.

{¶34} Viewing the evidence in the light most favorable to the State, there is sufficient evidence in the record to prove Mr. Mingo's identity as one of the perpetrators of the murder of T.C. The jury was presented with evidence showing that Mr. Mingo was near the murder scene at the time of the murder, that Mr. Mingo and two other individuals ran from the murder scene and to an apartment building where Mr. Mingo resided, and that Mr. Mingo, D.D., and J.R. were at a

pawn show the day after the murder attempting to pawn items that belonged to T.C. Evidence was also presented indicating that Mr. Mingo made false representations to the police after his arrest.

**{¶35}** Based on a thorough review of the record, this Court concludes that there is sufficient evidence upon which a jury could reasonably conclude that all the elements of murder, including identity, were established beyond a reasonable doubt. Mr. Mingo's sufficiency of the evidence argument, as asserted in his third assignment of error, is overruled.

### Murder (R.C. 2903.02(B)) Conviction – Manifest Weight of the Evidence

**{¶36}** Even though Mr. Mingo did not separately argue his sufficiency and manifest weight challenges, in the exercise of its discretion, this Court is separately considering these challenges. "When considering whether a conviction is against the manifest weight of the evidence, this Court applies a different standard than in a sufficiency analysis." *Zappa*, 9th Dist. Wayne No. 20AP9925, 2022-Ohio-243, at ¶ 17. To evaluate the weight of the evidence, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins*, 78 Ohio St.3d at 387.

**{¶37}** Having reviewed the record, we cannot conclude that this is an exceptional case where the jury lost its way by convicting Mr. Mingo. *See Otten* at 340. In addition to other extensive testimony and evidence, the jury heard testimony identifying Mr. Mingo as the person with the white shoes and camouflage pants seen in the surveillance video and running from the murder scene. The jurors watched the surveillance video from December 3, 2020, and saw three

individuals running from the murder scene and towards a Nestor Avenue apartment complex where Mr. Mingo lived. The jurors saw the pawn shop surveillance video showing Mr. Mingo, D.D. and J.R. attempting to pawn several of T.C.'s items, including a ring and pendant necklace that were stolen as part of the murder. The jurors were presented with the cell phone location records, showing that Mr. Mingo's cell phone was in the area of the murder at approximately the time of the murder. The jurors were also presented with testimony that Mr. Mingo attempted to hide when the police went to arrest him on a warrant in March, 2021. The presented testimony and evidence, including the surveillance videos, contradicted Mr. Mingo's claim that he was in Wisconsin in December, 2020.

{¶38} It is well-established that "a trier of fact enjoys the best position to assess the credibility of witnesses." *State v. Tyus*, 9th Dist. Summit No. 29520, 2020-Ohio-4455, ¶ 57. *See also Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35 ("the jury is free to believe all, part, or none of the testimony of each witness."). This Court "'will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version.'" *State v. Tolliver*, 9th Dist. Lorain No. 16CA010986, 2017-Ohio-4214, ¶ 15, quoting *State v. Barger*, 9th Dist. Medina No. 14CA0074-M, 2016-Ohio-443, ¶ 29.

{¶39} Upon our review of the entire record, we conclude that the jury, in resolving any conflicts in the evidence, did not clearly lose its way and create a manifest miscarriage of justice requiring a reversal of Mr. Mingo's murder conviction. *See Otten*, 33 Ohio App.3d at 340. This is also not an exceptional case in which the evidence weighs heavily against the conviction. *See Thompkins*, 78 Ohio St.3d at 387. Mr. Mingo's manifest weight of the evidence argument, as asserted in his third assignment of error, is overruled.

**Complicity Jury Instruction**

**{¶40}** Mr. Mingo lastly argues in his third assignment of error that the trial court gave an erroneous complicity jury instruction. Mr. Mingo asserts:

> To prove complicity by aiding and abetting the State must show 'the defendant supported, assisted, cooperated with the principal in the commission of the crime *and shared the criminal intent* of the principal. TR. 858. But the State argued that purpose:

> '…does not have to be their intent. This is the money ball murder. That does not have to be the defendant's intent or any other co-workers, meaning – co-defendants.' TR. 881.

(*Emphasis sic.*) Mr. Mingo fails to provide any clear argument as to why he believes the complicity jury instruction was erroneous. Mr. Mingo does not offer any further explanation as to what he believes the complicity instruction should have been. Additionally, Mr. Mingo fails to provide any legal authority to support his conclusory assertion.

**{¶41}** An appellant's brief is required to contain a section devoted to argument and law "with citations to the authorities, statutes, and parts of the record on which the appellant relies." App.R. 16(A)(7); Loc.R. 16(A)(7) ("The argument shall contain the contentions of the appellant with respect to the assignments of error and the supporting reasons with citations to the authorities and statutes on which the appellant relies."). "An appellant bears the burden of formulating an argument on appeal and supporting that argument with * * * legal authority." *State v. Watson*, 9th Dist. Summit No. 24232, 2009-Ohio-330, ¶ 5, citing App. R. 16(A)(7)). "[F]ailure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal." *Kremer v. Cox*, 114 Ohio App.3d 41, 60 (9th Dist.1996).

**{¶42}** "Where an appellant fails to cite to any law supporting [his] assignments of error, it is not this Court's duty to create an argument for [him]." *State v. Vanest*, 9th Dist. Summit No. 28339, 2017-Ohio-5561, ¶ 29; *Messer v. Summa Health Sys.,* 9th Dist. Summit No. 28470, 2018-

Ohio-372, ¶ 71. We "may summarily reject an appeal where the appellant fails to properly brief and argue his assignments of error in the manner required by the Appellate Rules." *Akron v. Adams*, 9th Dist. Summit No. 18389, 1997 WL 775644, *1 (Oct. 29, 1997); *Advertising Tapes, Inc. v. Misquitta*, 9th Dist. Summit No. 18631, 1998 WL 178562, *1 (Apr. 15, 1998).

**{¶43}** Mr. Mingo fails to cite any law supporting his assignment of error as it relates to the complicity jury instruction and it is not this Court's duty to create an argument for him. Mr. Mingo's assignment of error as it relates to the complicity jury instruction is overruled.

**{¶44}** For all of the reasons set forth above, when addressing the numerous arguments presented under the third assignment of error, Mr. Mingo's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

**THE IMPOSITION OF CONSECUTIVE FIREARM SPECIFICATIONS IS CONTRARY TO LAW[.]**

**{¶45}** Mr. Mingo argues in his fourth assignment of error that the imposition of consecutive firearm specifications is contrary to law. Mr. Mingo argues that the trial court violated the ex post facto clause of the United States Constitution and the Ohio Constitution when it applied *State v. Bollar*, 171 Ohio St.3d 678, 2022-Ohio-4370. Mr. Mingo alternatively argues that *Bollar* is distinguishable and inapplicable in this case. We disagree.

### Constitutionality of *Bollar*

**{¶46}** We initially note that Mr. Mingo did not raise an ex post facto objection to the application of *Bollar* in the trial court. As such, he has forfeited any alleged error for a purported ex post facto violation on appeal. *See State v. McClanahan*, 9th Dist. Summit No. 23380, ¶ 6, 2007-Ohio-1821. Assuming arguendo that Mr. Mingo has not forfeited the right to raise this issue, his argument lacks merit.

**{¶47}** It is well-settled that "[t]he federal constitutional prohibition on ex post facto laws applies only to *statutory* changes enacted by the legislature * * *." (Emphasis sic.) *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 252. Likewise, the Ohio Constitution's ex post facto clause "is expressly a limitation on the power of the General Assembly and does not apply to judicially created rules." *Id. See Ruhlman v. Brunsman*, 664 F.3d 615, 619-620 (6th Cir.2011), quoting *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001) ("It is well established that the Ex Post Facto Clause 'does not of its own force apply to the Judicial Branch of government.' For this reason alone, [the defendant]'s Ex Post Facto Clause challenge fails.") Mr. Mingo's ex post facto argument is based on a judicially created rule and, thus, fails.

## Applicability of *Bollar*

**{¶48}** Mr. Mingo alternatively argues in his fourth assignment of error that, even if no ex post facto violation, *Bollar*, 171 Ohio St.3d 678, 2022-Ohio-4370 is distinguishable and does not apply. Mr. Mingo maintains that, not only is *Bollar* factually distinguishable, it does not mandate multiple consecutive sentences for gun specifications on merged offenses in every case. For the following reasons, Mr. Mingo's fourth assignment of error is overruled.

**{¶49}** The Ohio Supreme Court has held that "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).

{¶50} The trial court imposed consecutive prison terms for the three-year firearm specifications attached to Mr. Mingo's murder and aggravated robbery convictions. R.C. 2929.14(B)(1)(b) provides that "[e]xcept as provided in division (B)(1)(g) of this section, a court shall not impose more than one prison term on an offender under division (B)(1)(a) of this section for felonies committed as part of the same act or transaction." However, "[a]s explicitly noted in R.C. 2929.14(B)(1)(b), the general rule in that statute is subject to the exception set forth in R.C. 2929.14(B)(1)(g) * * *." *Bollar* at ¶ 12. R.C. 2929.14(B)(1)(g) states:

> If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape, and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

{¶51} The jury found Mr. Mingo guilty of murder and aggravated robbery, both with attendant three-year firearm specifications. Based on Mr. Mingo's murder conviction, and pursuant to R.C. 2929.14(B)(1)(g), the trial court had to impose prison terms for "the two most serious [firearm] specifications * * *." The trial court complied with the statutory sentencing mandates by imposing prison terms for the two attendant firearm specifications attached to the murder and aggravated robbery convictions.

{¶52} The Ohio Supreme Court's ruling in *Bollar* further establishes that the trial court had to impose prison terms for both firearm specifications. The Court explained in *Bollar* at ¶ 16, that "convicted" as used in R.C. 2929.14(B)(1)(g) means "found guilty." The Court explained:

> [R.C. 2929.14(B)(1)(g)] requires that the offender receive prison terms for each of the two most serious firearm specifications when the offender pleads guilty to multiple felony offenses (and at least one of those is a felony listed in the statute)

and also pleads guilty to multiple accompanying specifications. [R.C. 2929.14(B)(1)(g)] makes no exception to the application of its provisions when one of the underlying felony offenses has been merged. Instead, it simply applies whenever the offender has pleaded guilty to (*or been found guilty of*) multiple felony offenses and multiple specifications. Here, Bollar pleaded guilty to multiple felonies and multiple specifications. Thus, according to the plain language of the statute, he must receive prison terms for the two most serious specifications to which he pleaded guilty.

(Emphasis added*.) Id.* at ¶ 19. Contrary to Mr. Mingo's assertion, *Bollar* does not only apply in cases where the defendant pleaded guilty.

**{¶53}** Mr. Mingo was convicted of murder, one of the offenses identified in R.C. 2929.14(B)(1)(g) as triggering the requirement that the trial court impose prison terms for the two most serious firearm specifications, and he was convicted of the three-year firearm specifications that were attached to his murder and aggravated robbery convictions. R.C. 2929.14(B)(1)(g) applied, and as clarified in *Bollar*, the trial court had to impose prison terms for both firearm specifications. *See State v. Miller*, 9th Dist. Summit No. 30335, 2023-Ohio-1466, ¶ 32 (this court affirmed the imposition of prison terms for firearm specifications attached to jury convictions of attempted murder and felonious assault). The fact that the *Bollar* defendant was convicted of a different offense that triggered the applicability of R.C. 2929.14(B)(1)(g) is of no import.

**{¶54}** We conclude that, pursuant to R.C. 2929.14(B)(1)(g) and *Bollar*, the trial court properly imposed prison terms for the two firearm specifications. Mr. Mingo's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR V

**THE CONVICTION AND SENTENCE FOR HAVING A WEAPON [WHILE] UNDER DISABILITY IS CONTRARY TO LAW[.]**

**{¶55}** Mr. Mingo argues in his fifth assignment of error that the conviction and sentence for having a weapon while under disability is contrary to law. Mr. Mingo argues for the first time

that R.C. 2923.13(A)(1) violates Ohio Constitution Art. I, Sec. 4 and the Second Amendment to the United States Constitution. Mr. Mingo presents another constitutional challenge and argues that the trial court's sentence for having weapons while under disability violates double jeopardy. Mr. Mingo also argues that his having weapons while under disability conviction is not supported by either the sufficiency or manifest weight of the evidence. Mr. Mingo's fifth assignment of error is overruled.

### Constitutional Challenges

{¶56} Mr. Mingo argues in his fifth assignment of error that R.C. 2923.13(A) is unconstitutional as it violates his right to bear arms and because he was not "disabled." Without further explanation, Mr. Mingo maintains:

> There is no historical constitutional basis to disable any citizen from possessing a firearm. [*E.g.*], *United States v. Connelly*, 2023 U.S.Dist. LEXIS 62495 [2023 WL 2806324] (April 6, 2023)[.]
>
> As applied here, the HWWUD statute violates the Ohio Constitution Art. I, Sec. 4 and the Second Amendment to the U.S. Constitutions.
>
> Appellant has a right to bear arms and was NOT "disabled." Greenlee, Joseph G.S. (2020) The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms. *Wyoming Law Review*, Vol.20:No.2, Article 7[.]

{¶57} Mr. Mingo further argues in his fifth assignment of error that the trial court's sentence for having weapons while under disability violates double jeopardy. Mr. Mingo maintains that, because the trial court sentenced him to nine months in prison while ordering that he receive 654 days of jail-time credit, it punished him twice for the offense of having weapons while under disability. The constitutional challenges presented in the fifth assignment of error are overruled.

{¶58} Mr. Mingo did not raise a constitutional challenge to the application of R.C. 2923.13(A)(1) or to his sentence for this offense in the proceedings below and has thus forfeited

all but plain error on appeal. *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 2 ("The failure to challenge the constitutionality of a statute in the trial court forfeits all but plain error on appeal, and the burden of demonstrating plain error is on the party asserting it."). Under a plain error analysis, the appellant has the burden of demonstrating that a plain error affected his substantial rights, meaning that the error affected the outcome of the trial. *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 14. "In order to establish plain error, there must be (1) a deviation from a legal rule; (2) that is obvious, and; (3) that affects the appellant's substantial rights." *State v. Smith*, 9th Dist. Summit No. 25069, 2010-Ohio-3983, ¶ 27.

{¶59} In his brief, Mr. Mingo merely makes the bald statement that R.C. 2923.13(A) is unconstitutional as it violates his right to bear arms and because he was not disabled. Mr. Mingo does not fashion an argument as to the existence of plain error in accordance with the required factors. We decline to develop a plain error argument for him and then address the merits. *See* App.R. 16(A)(7); *State v. Cross*, 9th Dist. Summit No. 25487, 2011-Ohio-3250, ¶ 41 ("While a defendant who forfeits such an argument may still argue plain error on appeal, this court will not sua sponte undertake a plain error analysis if a defendant fails to so so.").

{¶60} With respect to his sentence for having weapons while under disability conviction, Mr. Mingo does not cite to any relevant authority where a court found a double-jeopardy violation under such circumstances. Further, Mr. Mingo does not explain how the trial court's single sentence on one count constitutes multiple punishments. Mr. Mingo has not developed a plain error argument on appeal and this Court will not develop an argument on his behalf. Mr. Mingo's constitutional challenge as asserted in his fifth assignment of error is overruled.

**Having Weapons While Under Disability Conviction – R.C. 2923.13(A)(1)**

**{¶61}** The jury found Mr. Mingo guilty of having weapons while under disability in violation of R.C. 2923.13(A)(1). R.C. 2923.13(A)(1) provides that "[n]o person shall knowingly * * * have * * * any firearm or dangerous ordnance, if * * * [t]the person is a fugitive from justice." Mr. Mingo argues in his fifth assignment of error that the State failed to prove that he knew he was a fugitive from justice and that, therefore, his having weapons while under disability conviction is against the sufficiency and manifest weight of the evidence.

**{¶62}** Again, Mr. Mingo has failed to separately argue sufficiency and manifest weight. To aid the administration of justice, this Court will again separately address Mr. Mingo's combined arguments.

**Having Weapons While Under Disability (R.C. 2923.13(A)(1))**
**Sufficiency of the Evidence**

**{¶63}** As previously set forth, "[w]hether a conviction is supported by sufficient evidence is a question of law that this Court review de novo." *Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, at ¶ 18, citing *Thompkins*, 78 Ohio St.3d at 386. The relevant inquiry is whether, viewing the evidence in the light most favorable to the State, the State met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390; *Zappa* at ¶ 7, citing *Jackson*, 443 U.S. at 319. This Court does not evaluate credibility and it makes all reasonable inferences in favor of the State. *Jenks*, 61 Ohio St.3d at 273. Evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*

**{¶64}** Mr. Mingo was convicted of having weapons while under disability in violation of R.C. 2923.13(A)(1). Contrary to what Mr. Mingo argues on appeal, the State did not have to prove that he knew he was a fugitive from justice. There is no mens rea requirement attached to the

fugitive from justice element of having weapons while under disability under R.C. 2923.13(A)(1). *In re J.T.*, 1st Dist. Hamilton Nos. C-140143 and C-140144, 2014-Ohio-5062, ¶ 20; *State v. Kortz*, 2d Dist. Montgomery No. 25041, 2013-Ohio-121, ¶ 15 (both holding that, "[b]ecause [R.C. 2923.13(A)(1)] required proof that [the offender] knowingly possessed a firearm, the State was not required to prove a culpable mens rea for the additional element that he was a fugitive from justice.")

{¶65} Mr. Mingo has again asserted an argument based on a false premise, an element that the State was not required to prove. *State v. Graham*, 9th Dist. Wayne No. 98CA0007, 1998 WL 887151; *State v. J.B.*, 9th Dist. Summit No. 29286, 2019-Ohio-4659. As his sufficiency challenge to the having weapons while under disability conviction in violation of R.C. 2923.13(A)(1) is solely based on a false premise, it is overruled.

### Having Weapons While Under Disability (R.C. 2923.13(A)(1)
### Manifest Weight

{¶66} Mr. Mingo has not provided a specific, separate, manifest weight argument regarding his having weapons while under disability conviction and this Court will not develop one on his behalf. *See State v. Franks*, 9th Dist. Summit No. 28533, 2017-Ohio-7045, ¶ 16. While Mr. Mingo states that his having weapons while under disability conviction is against the manifest weight of the evidence, he does not provide any further argument or support for this position. This Court will not create arguments on Mr. Mingo's behalf.

{¶67} For the reasons set forth above, Mr. Mingo's fifth assignment of error is overruled.

### ASSIGNMENT OF ERROR VI

**THE OBSTRUCTING JUSTICE SENTENCE HAS BEEN SERVED[.]**

{¶68} Mr. Mingo argues in his sixth assignment of error that the trial court's sentence for obstructing justice constitutes multiple punishments that violate double jeopardy. This assignment of error is overruled.

{¶69} Mr. Mingo did not raise any double-jeopardy issues regarding the trial court's sentence for the obstructing justice conviction in the proceedings below and, accordingly, he has forfeited all but plain error on appeal. *Quarterman* at ¶ 2. As with the double jeopardy argument presented in his fifth assignment of error, Mr. Mingo has failed to develop a plain error argument regarding the trial court's sentence for his obstructing justice conviction. Mr. Mingo has not developed this argument nor supported this assignment of error with any relevant authority holding that a prison sentence with more jail-time credit than the length of the imposed sentence is a double jeopardy violation. Again, Mr. Mingo has not developed a plain error argument on appeal and this Court will not develop an argument on his behalf. Mr. Mingo's constitutional challenge as asserted in his sixth assignment of error is overruled.

### III.

{¶70} For the reasons stated above, Mr. Mingo's first, second, third, fourth, fifth, and sixth assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

—————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
SCOT STEVENSON
FOR THE COURT

HENSAL, P. J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

MARK LUDWIG, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.